## A01A0340. HILL v. THE STATE.
(550 SE2d 422)

MILLER, Judge.

After the occurrence of a fatal hit and run incident, Geovanne Hill was convicted of homicide by vehicle in the first degree. Follow-

---

ing the denial of a motion for new trial, Hill filed this appeal in which he contends that a jury charge that defined self-defense was not adjusted to the facts and also challenges the sufficiency of the evidence. After review, we affirm.

On appeal, the evidence must be viewed in a light most favorable to the verdict, and Hill is no longer entitled to a presumption of innocence.[1] When so considered, the evidence established that Hill agreed to give Joanna Cuenca a ride home from a nightclub. At about 3:30 a.m., Hill decided to detour to purchase some drugs. While in a neighborhood described by Cuenca as "bad," Hill's tow truck broke down, and two men robbed him of $200 to $300. Cuenca described Hill as angry because "he supposedly knew these people." Arming himself with a stick, he told Cuenca to watch his back while he tried to fix his truck. Hill provided Cuenca with a knife, telling her "[i]f someone tries to come, just slice them."

After adjusting the fuel pump, Hill resumed cruising, looking for drugs. When a woman approached Hill's truck and opened her hand to show him the drugs she had for sale, Hill refused to buy from her, saying, "it is not a dime. It is a nickel." After the woman walked away, Hill reconsidered and called her back. Displaying a $20 bill, Hill told her he wanted to see the drugs again. Hill did not give her any money. Instead, according to Cuenca, "when she opened her hands, he just snatched it. And then she got ahold of the window, okay, the driver's side window because it was half cracked. And then she grabbed onto the sideview mirror because he was pressing on the gas." Hill, as Cuenca described the scene, drove off with the victim holding on tight with her right hand on the window and her left hand on the mirror. Despite the victim's repeated pleas to stop and her warning to "stop the truck or I'll kill you," Hill accelerated, running two stop signs. According to Cuenca's testimony, Hill was driving 35 to 40 mph and screaming at her to "get off my truck." Cuenca implored him to stop, saying he was crazy. When Cuenca tried to yank the truck out of gear, Hill slapped her hand away. To dislodge the woman, Hill began driving side to side across the road. Cuenca testified, "he was holding onto her hand, for a while, and then he started peeling her fingers off the truck and pushed her off and [ran] her over." Feeling the impact as the wrecker ran over the victim, Cuenca looked back and saw her lying in the road. Cuenca testified that "after he ran over that lady I told him the least he can do is call an ambulance for the lady." Hill refused to do so, telling Cuenca, "[y]ou didn't see nothing," and instructing her not to tell anyone.

Forensic and eyewitness testimony corroborated Cuenca's ver-

---

[1] *Ward v. State*, 242 Ga. App. 246 (529 SE2d 378) (2000).

sion of events. Angelo Jones, a friend of the victim, testified that while he was standing next to her, a man driving a black wrecker stopped and asked her, "[s]ay where [can] I get me something to smoke at." According to Jones's testimony, she took a step up on the wrecker, "and the next thing I know . . . he grabbed her arm or something and hit the gas pedal. He flew down the street, he went over this bump, hit the bump, then ran that stop sign, hit another bump, ran that stop sign, and drug her all the way down the street." Jones testified that he overheard his friend saying, "let me go, let me go. But he wouldn't let her go." Scuff marks on the victim's boots corresponded with being dragged against the pavement. An autopsy established that the decedent sustained severe compression injuries to her ribs, heart, and liver. A forensic pathologist determined the victim's massive cranial cerebral trauma and "crushing compression" of the chest cavity were injuries consistent with a person "dropping away from a moving vehicle" and being run over by it.

Hill was tried under an indictment for murder, felony murder, and aggravated assault. The jury, however, acquitted Hill of those charges and found him guilty of homicide by vehicle in the first degree.

1. Hill contends that the trial court erred in its charge by defining self-defense in a manner not adjusted to the facts of the case.

The charge at issue appears in the midst of a multi-page, detailed instruction on self-defense, justification, and the proper use of justifiable force to protect oneself or another person from imminent danger. The trial court charged:

> A person has the right to defend himself, but a person is not justified in deliberately assaulting another person not to prevent any impending wrong but solely in revenge for a past or previous wrong, regardless of how serious the past or previous wrong might have been, when the episode involving the previous wrong has ended. Such person is not justified in revenge by deliberately seeking out and assaulting the alleged wrongdoer.

Hill contends that this charge may have misled the jury into thinking that what occurred was not an isolated incident. He claims that the error was compounded by instructing the jury that a deliberate assault upon a person based on revenge for a previous wrong is not justified. Hill argues that since he and the victim had never previously met, this charge was inapt, confusing, and not adjusted to the evidence.[2]

---

[2] See *Brown v. State*, 232 Ga. App. 787, 790 (1) (d) (504 SE2d 452) (1998).

Hill, however, repeatedly tried to justify, explain, and excuse his behavior. In a custodial statement entered in evidence, Hill claimed the victim had been the aggressor. By his recitation of events,

> that lady came up and jumped in and she had something in her hand, I had just gotten beat up and robbed, she had something in her hand, I couldn't tell what. I took off, I slowed down and told her to get off the truck, she just kept trying to grab my money. I tried slowing down and told her to just go away. I wasn't going that fast. She fell off the truck. I didn't know I hurt anybody.

At trial, Hill explained that after the woman jumped onto his truck, he became fearful that she or her friends might hurt him. Hill testified, "I'd already been jumped once, you know, that night. I didn't know what was going to happen to me, but I knew it was going to be something bad." Under the defense's theory, while Hill was trying to leave a crime-infested area, he "just panicked," and a woman, who was threatening to kill him, fell off his truck and hit the pavement.

Hill sought and obtained extensive instructions on justification. However, "[a]s a matter of law, it is an essential element that, for justification to apply, the act must be committed under the fears of a reasonable man and not committed in a spirit of revenge."[3] To legally justify the use of force, an accused must truly have acted under the influence of the degree of fear reasonably appropriate to the circumstances and not to have acted in revenge.[4] Here, whether Hill was acting in a retaliatory or vengeful manner attributable to spitefulness for being robbed earlier, or for being overcharged for drugs, or for having the victim try to grab his last $20 bill, or whether Hill was acting in reasonable apprehension of being seriously harmed by the decedent or her friends were questions for the jury to resolve.[5] Notwithstanding Hill's contention to the contrary, the charge at issue is adjusted to the facts and does not appear misleading.[6] In any event, having considered this charge in the context of the instruction as a whole, we find no error.[7]

2. Hill contends that the evidence was not sufficient to sustain the verdict of conviction for homicide by vehicle in the first degree. We disagree. The applicable essential elements of this offense are: (1) causing the death of another, (2) without malice aforethought, (3) by

---

[3] *Jack v. State,* 245 Ga. App. 216, 218 (3) (536 SE2d 235) (2000), citing *Lackey v. State,* 217 Ga. 345, 347 (122 SE2d 115) (1961).

[4] *Jack,* supra, 245 Ga. App. at 217-218 (3).

[5] See *Shelley v. State,* 239 Ga. App. 841 (1) (521 SE2d 855) (1999).

[6] *Overand v. State,* 240 Ga. App. 682, 684 (2) (523 SE2d 610) (1999).

[7] See *Foote v. State,* 265 Ga. 58, 59-60 (2) (455 SE2d 579) (1995).

driving any vehicle, (4) with a reckless disregard for the safety of persons or property.[8] Here, the evidence established that Hill caused the death of the victim, without malice aforethought, by operating his truck in a manner exhibiting a reckless disregard for the safety of others.[9] This evidence was sufficient under the standard of *Jackson v. Virginia*[10] to sustain the jury's verdict.

*Judgment affirmed. Andrews, P. J., and Eldridge, J., concur.*

DECIDED JUNE 7, 2001.

*Luana K. Walsh*, for appellant.
*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Assistant District Attorney*, for appellee.

## A01A0890. MOONEY v. THE STATE.
### (550 SE2d 421)

---

[8]  OCGA § 40-6-393 (a); *Johnson v. State*, 170 Ga. App. 433 (317 SE2d 213) (1984).
[9]  See *Abernathy v. State*, 191 Ga. App. 350, 351 (2) (381 SE2d 537) (1989).
[10]  443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).