A01A1465. CARROLL v. THE STATE.
A01A1588. ADGER v. THE STATE.
(555 SE2d 807)

Ruffin, Judge.

A jury found co-defendants Eddie Lee Carroll and Herman Adger guilty of selling cocaine and possessing cocaine with intent to

distribute.[1] Both defendants moved for a new trial, which the trial court denied, and these appeals followed. In Case No. A01A1465, Carroll challenges the sufficiency of the evidence, claims that the trial court made a charging error, and argues that he was denied effective assistance of counsel. Adger appeals in Case No. A01A1588, alleging the same charging error and also ineffective assistance of trial counsel. Because both appeals involve the same operative facts, we have consolidated them for review, and for reasons that follow, we affirm.

"On appeal, the appellant[s] no longer enjoy[ ] the presumption of innocence, and we view the evidence in a light most favorable to the verdict."[2] Viewed in this manner, the evidence shows that on August 28, 1998, the Chatham County Counter Narcotics Team conducted a "buy-bust" drug operation in Savannah. During that operation, Adger approached undercover agent Gerald Dillard on the street. According to Dillard, Adger asked him if he was "straight," which — in "street language" — referred to whether Dillard had any drugs. Dillard responded, "no, I'm looking for something." Adger inquired what Dillard was looking for, and Dillard replied, "a 15 piece, I don't have but $15." Adger stated, "my boy's got some over here," and he led Dillard to a wooden fence at the end of a nearby street.

Adger knocked on the fence, and Carroll appeared from behind the enclosure. At Adger's request, Dillard gave Adger the $15, which consisted of a $10 and a $5 bill bearing serial numbers that Dillard had recorded before the undercover operation began. Adger handed the money to Carroll and said, "let me get something for 15." Carroll then went back inside the fence. Dillard asked Adger why Carroll left. Adger replied, "he's good, he's gonna bring it to me."

Sometime later, the fence gate opened, and Carroll reappeared with a woman named Virgie Robinson. As Dillard and Adger walked toward the fence, Dillard saw Carroll hand Robinson a substance, then retreat back inside the fence. Robinson gave Dillard the substance, which the crime lab identified as cocaine.

Police arrested Adger shortly thereafter. Carroll, however, left the area before arresting officers arrived on the scene. Dillard and another officer later saw Carroll walking out of a nearby liquor store with a bag of potato chips and arrested him. Dillard searched Carroll for the money used in the buy-bust operation, but found no money. Officers then took Carroll back into the liquor store, where the manager verified that Carroll had purchased potato chips. Among the

---

[1] At sentencing, the trial court merged the two counts.
[2] *Strange v. State*, 250 Ga. App. 735, 736 (552 SE2d 899) (2001).

currency in the liquor store cash register, officers found the $5 bill used by Dillard in the buy-bust operation.

Both Carroll and Adger testified at trial. According to Adger, Agent Dillard approached him on the street and asked whether he was "straight." Adger responded that he did not have any drugs. At that point, an individual identified only as "Bubba" pulled up in a car. Adger spoke with Bubba and told Dillard that Bubba might be able to obtain some drugs. Dillard, Adger, and Bubba then walked toward Carroll's fence. Adger testified that he accompanied the two men only because Dillard was scared to follow Bubba by himself. Adger further testified that Dillard gave the money to Bubba, who called for Robinson as they approached Carroll's yard. Bubba left with the money, and Robinson gave Dillard a piece of cocaine. In Adger's view, only Dillard, Bubba, and Robinson participated in the actual drug transaction.

Carroll's testimony also included a reference to Bubba. Carroll testified that Dillard, Adger, and Bubba appeared outside his fence, but he told them to leave, never took any money from Adger, and did not give any drugs to Robinson.

### Case No. A01A1465

1. In his first enumeration of error, Carroll argues that the evidence did not support his convictions. We disagree. The State presented evidence that Carroll took Agent Dillard's money from Adger, left the scene, then returned with Robinson. He handed a substance later identified as cocaine to Robinson, who gave the cocaine to Agent Dillard. Furthermore, Carroll was arrested after making a purchase at a liquor store, where officers recovered a $5 bill used in the drug transaction. Based on this evidence, a rational trier of fact could find Carroll guilty beyond a reasonable doubt of selling cocaine and possessing cocaine with the intent to distribute.[3] Although Carroll denied involvement in the drug transaction, "[t]he jury was authorized to resolve the conflicts in the evidence and reject [Carroll's] testimony."[4]

2. Carroll also argues that the trial court improperly charged the jury on conduits and procuring agents. The trial court instructed jurors on parties to a crime, stating: "[E]very party to a crime may be charged with and convicted of commission of the crime. A person is a party to the crime only if that person directly commits the crime or intentionally helps in the commission of the crime or intentionally

---

[3] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Parker v. State*, 248 Ga. App. 748, 749 (1) (548 SE2d 634) (2001).
[4] Id.

advises, encourages, hires, counsels or procures another to commit the crime." It further charged "that under Georgia law, one may not act as a conduit or procuring agent and thus escape culpability or blame as a seller."

When reviewed for error, "the charge to the jury is to be taken as a whole and not out of context."[5] The charge must be sufficiently clear to be understood by jurors of ordinary intelligence.[6] On appeal, Carroll does not claim that the court's conduit/procuring agent charge misstated the law.[7] Instead, he argues that the charge unnecessarily particularized the general charge on parties to a crime and could have been "interpreted by the jury as an intimation of opinion by the court." He likens this charge to the jury instruction on "flight," which the Supreme Court disapproved in *Renner v. State*,[8] in part because a jury might interpret a flight charge as an expression of opinion that "there is evidence of flight and that the circumstances of flight imply the guilt of the defendant."

Carroll has made no effort to explain how the conduit/procuring agent charge could be viewed as expressing the trial court's "opinion." In *Renner*, the Supreme Court determined that jurors could interpret a flight charge as expressing the trial court's opinion that flight implies guilt because "the trial court does not give specific charges on other circumstances from which guilt or innocence may be inferred."[9] Carroll has not suggested a similar way in which the conduit/procuring agent charge intimates the trial court's opinion, and we find none.

Read as a whole, the court's instructions properly charged jurors on parties to a crime. The trial court gave the general definition of parties, then added a statement about conduits and procuring agents. This additional statement could be viewed as unnecessary or repetitive. Considering the entire charge, however, we cannot conclude that any unnecessary or superfluous language in the conduit/procuring agent instruction harmed Carroll.[10] Accordingly, this enumeration of error presents no basis for reversal.

---

[5] (Punctuation omitted.) *Roberson v. State*, 236 Ga. App. 654, 655 (1) (a) (512 SE2d 919) (1999).

[6] Id.

[7] See *Diana v. State*, 164 Ga. App. 779, 780 (1) (298 SE2d 281) (1982) ("The theory that one may act as a conduit or procuring agent of the purchaser and thus escape culpability as a seller has been considered and rejected by this court.").

[8] 260 Ga. 515, 518 (3) (b) (397 SE2d 683) (1990).

[9] Id.

[10] See *Salahuddin v. State*, 241 Ga. App. 168, 169-170 (1) (525 SE2d 422) (1999) (physical precedent only); *Roberson*, supra at 656; see also *Murray v. State*, 253 Ga. 90, 93 (4) (317 SE2d 193) (1984) (" 'A mere repetition of a principle of law, while unnecessary, will not work a reversal unless it appears from the charge as a whole that there was such undue emphasis as to result in an unfair statement of the law in relation to the defendant's rights.' ").

3. Finally, Carroll argues that he did not receive effective assistance of trial counsel. Following the hearing on Carroll's motion for new trial, the trial court rejected this claim. On appeal, we will affirm this ruling unless it is clearly erroneous.[11]

Carroll argues that his trial counsel rendered ineffective assistance by failing to move for a mistrial after a potential juror stated during voir dire that Carroll had been incarcerated. To succeed on this claim, Carroll must show that his trial counsel's performance was deficient *and* that the deficiency prejudiced his defense.[12] The prejudice prong requires Carroll to establish "a reasonable likelihood that, but for counsel's error[ ], the outcome of the trial would have been different."[13]

The record shows that, during voir dire, the prosecutor asked the panel whether anyone knew Carroll. A venire member employed by the sheriff's department responded, "[w]hile he was incarcerated, while he was incarcerated." At the request of Carroll's counsel, the trial court excused the potential juror for cause. Carroll contends, however, that counsel also should have moved for a mistrial. According to Carroll, the prospective juror's reference to his incarceration tainted the jury panel, presumably by placing his character at issue.

At the new trial hearing, trial counsel testified that he did not move for a mistrial because he thought such a motion would be frivolous. Given the circumstances of this case, we agree. In *Taylor v. State*,[14] our Supreme Court indicated that "mere mention that a defendant has been in jail falls short of placing his character at issue."[15] The prospective juror in this case simply stated that he knew Carroll while Carroll was incarcerated. Under *Taylor*, that statement did not place Carroll's character at issue or taint the proceedings. Any motion for mistrial or to disqualify the jury on this basis, therefore, likely would have been frivolous.[16] Failure to make a frivolous motion does not constitute deficient performance.[17]

Furthermore, even if counsel's performance could be viewed as deficient, we find no prejudice. In light of the significant evidence against Carroll, including Agent Dillard's eyewitness testimony and the $5 bill recovered from the liquor store, there is no reasonable likelihood that the potential juror's comment contributed to the

---

[11] *Potter v. State*, 273 Ga. 325, 326 (540 SE2d 184) (2001).

[12] Id. at 325.

[13] Id. at 325-326.

[14] 272 Ga. 559 (532 SE2d 395) (2000).

[15] Id. at 561 (2) (c); see also *Johnson v. State*, 247 Ga. App. 157, 165-166 (14) (543 SE2d 439) (2000).

[16] The proper remedy for an error during jury selection is disqualification of the jury, not a mistrial. *Nelson v. State*, 199 Ga. App. 487, 488 (4) (405 SE2d 310) (1991).

[17] *Lane v. State*, 250 Ga. App. 160, 161 (1) (549 SE2d 468) (2001).

guilty verdict.[18] Accordingly, we find no clear error in the trial court's determination that Carroll received effective assistance of counsel.[19]

### *Case No. A01A1588*

4. Adger also claims that he was denied effective assistance of counsel. His argument focuses on three errors allegedly made by trial counsel. As discussed below, none of these claimed errors supports reversal.

(a) Adger first argues that trial counsel failed to adequately explain to him the concept of parties to a crime. Adger testified at the new trial hearing that had he known even his version of events involving "Bubba" could sustain a conviction as a party to the crime, he would have accepted the State's pre-trial plea offer. Trial counsel appeared at the hearing and disputed Adger's claim. According to counsel, he explained to Adger that regardless of whether Adger took Dillard directly to Carroll or told Dillard to talk to Bubba about purchasing drugs, he could be found guilty as a party to the crime. Trial counsel further testified that he encouraged Adger to take the State's plea offer, but Adger refused.

The parties presented conflicting testimony at the new trial hearing. As the factfinder at that hearing, the trial court was authorized to believe trial counsel over Adger.[20] The trial court did not clearly err, therefore, in refusing to find ineffective assistance of counsel on this ground.

(b) Adger next asserts that trial counsel, in essence, forced him to testify at trial, even though he did not want to take the stand. According to Adger, trial counsel told him that he needed to testify so that the jurors would understand his side of the story. In Adger's words: "I told [counsel] I didn't want to take the stand. He said that would be the only way is [sic] for me to get up here and testify." Again, trial counsel offered conflicting testimony. Counsel stated that he advised Adger against testifying because he did not want Adger to admit any involvement in the drug transaction. Adger, however, was adamant about telling the jury " 'the truth.' "

"Whether or not to testify in one's own defense is considered a tactical decision to be made by the defendant himself after consulta-

---

[18] See *Moore v. State*, 242 Ga. App. 249, 250-251 (1) (a) (529 SE2d 381) (2000); see also *Sweeder v. State*, 246 Ga. App. 557, 561-562 (5) (541 SE2d 414) (2000) (denial of mistrial not error because, given "overwhelming nature and sheer volume of the evidence against [the defendant], it [was] extremely doubtful that a single reference to [the defendant's] incarceration would have materially influenced the jury's decision whether to acquit or convict") (punctuation omitted).

[19] *Moore,* supra.

[20] *Conger v. State*, 245 Ga. App. 399, 401 (3) (b) (537 SE2d 798) (2000).

tion with his trial counsel."[21] Given trial counsel's testimony that, although he advised Adger not to testify, Adger insisted on taking the stand, we find no clear error in the trial court's decision to reject Adger's claim on this ground.

(c) At the new trial hearing, Adger's mother and ex-wife asserted that they would have testified about Adger's efforts to support his family if trial counsel had called them as witnesses at the sentencing hearing. Specifically, his ex-wife would have testified that Adger provided for his children. Adger's mother, with whom he lived, would have stated that Adger did not "freeload" and that he helped take care of his grandmother, who also lived in the house. Adger argues that trial counsel's failure to present this mitigating evidence constituted deficient performance.

According to trial counsel, however, Adger specifically told him not to contact his ex-wife. In light of this testimony, the trial court committed no error in refusing to find a deficiency in counsel's failure to call Adger's ex-wife as a mitigating witness. Trial counsel further testified that when he discussed possible mitigating evidence with his client, Adger never mentioned that he aided his mother or grandmother in any way. Once again, the trial court could have reasonably found no deficiency here.

Furthermore, even if trial counsel's failure to call these witnesses could be viewed as deficient performance, Adger has not shown prejudice. Although the trial court sentenced Adger to a mandatory 30-year term, the court probated 18 years of that sentence, leaving him with 12 to serve. Adger insists that the trial court would have probated a greater portion of that sentence if his mother and ex-wife had testified at the sentencing hearing. He has pointed to no evidence, however, that the proffered mitigating testimony would have altered the trial court's sentence. Accordingly, Adger has not shown that trial counsel's failure to present this evidence in mitigation prejudiced him.[22]

(d) Adger alleges that trial counsel committed a litany of other errors. He makes no effort, however, to show how these claimed errors prejudiced his defense. In fact, he admits on appeal that "[d]ue to the extremely strong evidence supporting the jury's verdicts of guilty . . . [these errors] may fall short of establishing the prejudice prong." Because Adger has not met his burden of showing prejudice, these alleged errors by trial counsel present no basis for reversal.[23]

5. Like Carroll, Adger enumerates as error the trial court's con-

---

[21] (Punctuation omitted.) *Potter*, supra at 327-328.

[22] See *Thigpen v. State*, 248 Ga. App. 301, 303 (c) (546 SE2d 60) (2001); *Barber v. State*, 236 Ga. App. 294, 299 (5) (512 SE2d 48) (1999).

[23] See *Conger*, supra at 401 (3) (a).

duit/procuring agent charge. We have already found that the trial court did not err in giving this charge. Accordingly, this enumeration of error lacks merit.

*Judgments affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED OCTOBER 24, 2001 — 

*Thomas J. Gustinella*, for appellant (case no. A01A1465).

*Jackson & Schiavone, Steven L. Sparger*, for appellant (case no. A01A1588).

*Spencer Lawton, Jr., District Attorney, Ronald M. Adams, Assistant District Attorney*, for appellee.