A05A1109. ROLLING v. THE STATE.

(622 SE2d 102)

SMITH, Presiding Judge.

Roderick Rolling was convicted by a jury of one count of burglary. He was sentenced as a recidivist to 20 years in confinement. His motion for new trial was denied, and he appeals, challenging the sufficiency of the evidence and contending that he was denied effective assistance of counsel. We find no reversible error, and we affirm.

1. We first address Rolling's contention that the evidence was insufficient to convict him. Construed in favor of the jury's verdict, the evidence presented at trial shows that the victim lived in one unit

of a duplex, and Rolling lived with his girlfriend and her children in the other unit. On October 16, 2000, the victim arrived home from work at approximately 4:45 p.m. and left a short time later. She testified that when she returned at about 7:00 p.m., Rolling "was on the porch area and he told me that he had accidentally kicked the window and the pane was broke." The victim instructed Rolling to "get the landlord to fix it" and entered her residence. She testified that the broken window, which was located in an extra bedroom, "had fissures going out" and that a hole in the glass was "maybe big enough for you to stick your hand in up to the wrist . . . without getting cut." She applied cement glue to the fissures and cracks and "glued some paper up to the hole." She unsuccessfully tried to wedge a stick in the window and then "used some small nails to nail along the top of the stick so that it could not be pushed up." The victim then moved a bookshelf in front of the window and pushed a "solid arm chair" against it. The bookshelf was larger than the window and "was full of books and stuffed toys."

Two days later, on October 18, shortly after being notified that her security alarm was sounding, the victim arrived home to find the same window completely broken and the bookshelf turned over onto the floor. She determined that some jewelry was missing from her bathroom. Broken glass was discovered outside the broken window but not inside the extra bedroom. An empty compact disc case was also found on the ground. Rolling's fingerprints were lifted from pieces of the glass lying on the ground, as well as from the compact disc case, which belonged to the victim. The victim testified that she had 15 compact discs, which she never took into her extra bedroom.

According to the victim, Rolling had been inside her residence only on one occasion before October 2000, when he removed a bunk bed that she had given to him. She testified that she observed Rolling the entire five to seven minutes he was inside her residence on that occasion and that he was present only in the hallway and back bedroom. An arrest warrant was issued for Rolling on October 20, 2000, but he was not arrested until one month later.

Detective Vince Lockhart testified concerning statements made by Rolling during a previous court proceeding. According to Lockhart, Rolling stated that a screwdriver fell through the window when he broke it accidentally, and he reached through it "to catch a book case" and to keep items on the book case "from turning over. . . . And that's how he thought that his prints had gotten on some of the items that was in the house." Lockhart testified that Rolling "was unclear on a lot of things that he was saying, that basically he began to describe items that was on the bookcase. . . . But the bookcase from my

understanding was turned to the back of the window and there was no way that he could've seen these items that was on the bookcase at that point."

Rolling testified at trial that the landlord had hired him to scrape and paint the outside of the duplex, which included cleaning the gutters and window sills. The landlord similarly testified that Rolling was hired to do some painting on the outside of the duplex, and if this "called for a gutter to come down, he could certainly have done that." Rolling explained that on October 16, he accidentally kicked the victim's window pane when he was pulling a gutter off of the building. He stated that the window "was cracked and previous[ly] glued already." He stated that it was "basically glued up with like plastic CD cover and stuff like that" and that "there was no paper on the window. . . . It was like the outside, outer shell of a CD cover. It wasn't the whole thing, it was just half of it, the clear plastic part glued to the window with silicone." According to Rolling, he informed the landlord of the incident the next morning, and the landlord gave him money to purchase a new windowpane. He testified that on October 18, the day of the burglary, he "pulled the glass out to replace the pane" and noticed at that time that "the CD cover was glued to the window." He denied going inside the victim's residence on that date or taking any jewelry or other personal items from the victim's home. He stated that as he was removing the glass on October 18, he dropped a screwdriver, reached inside to retrieve it, and pushed the back of the bookcase.

On cross-examination, Rolling acknowledged that he said nothing in the earlier court proceeding about the plastic CD cover that supposedly covered the hole in the victim's window; he testified that "basically, most of the stuff that happened didn't come quite back to me until like a couple of days later. Things started . . . getting more clearer of what happened as you sit down and think about things, it start to come more clearer." He acknowledged that he did not call the police and tell anyone about the additional facts he remembered. He also testified that on October 18, he was aware that the victim had an alarm system but did not notify the victim that he would be repairing her windowpane, so that she could deactivate the system.

Among other things, the trial court charged the jury on reasonable doubt, the burden of proof, circumstantial evidence, and the definition of burglary. In addition, following a question by the jury after it commenced deliberations, the court instructed the jury a second time on the definitions of direct and circumstantial evidence.

The crime of burglary occurs when a person enters or remains within another's dwelling house without authority and with the intent to commit a theft or felony therein. OCGA § 16-7-1. The

evidence against Rolling in this case was circumstantial. And to warrant a conviction on this evidence,

> the proved facts shall not only be consistent with guilt but shall exclude every other reasonable hypothesis save that of guilt of the accused. Such evidence need not exclude *every* inference or hypothesis except guilt of an accused, but only *reasonable* inferences and hypotheses, so as to justify the inference, beyond a reasonable doubt, of guilt. Questions as to reasonableness are generally to be decided by the jury which heard the evidence and where the jury is authorized to find the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, the appellate court will not disturb that finding, unless the verdict of guilty is unsupportable as a matter of law.

(Citations and punctuation omitted; emphasis in original.) *Watkins v. State*, 190 Ga. App. 429-430 (379 SE2d 227) (1989). Although circumstantial, the evidence in this case, which included Rolling's statements to the police and in court, was sufficient to authorize a rational trier of fact to conclude that all reasonable hypotheses were excluded, save Rolling's guilt. We cannot say that the verdict is "unsupportable as a matter of law," id., and we therefore will not disturb it.

2. Rolling argues that he was denied effective assistance of counsel in 23 respects. We note initially that Rolling's trial counsel was an experienced criminal defense lawyer, having handled "hundreds" of criminal cases since his admission to the practice of law in 1991. He testified during the hearing on Rolling's motion for new trial that he met with Rolling during his investigation of the case and that during his meeting he reviewed Rolling's statement taken by an investigator with the public defender's office. He further reviewed with Rolling the testimony given during Rolling's probable cause hearing in recorder's court, and he asked Rolling for the names of potential witnesses, physical evidence, or photographs that Rolling would like for him to obtain. Rolling did not provide him with the name of an alibi witness, and the only witness identified by Rolling was subpoenaed and testified at trial. Rolling's alleged alibi witness did not testify during the hearing on his motion for new trial.

To prevail on this claim, Rolling must show that his counsel was deficient and that this deficiency has prejudiced his defense. *Nhek v. State*, 271 Ga. 245, 247 (3) (517 SE2d 521) (1999). To show that his trial counsel was deficient, Rolling

> must overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional

conduct and that counsel's decisions were made in the exercise of reasonable professional judgment. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the circumstances of the case. The second prong requires that [appellant] show there is a reasonable probability that, absent counsel's unprofessional errors, the result of the trial would have been different. A court's finding that counsel has rendered effective assistance will be affirmed unless it is clearly erroneous.

(Citations and punctuation omitted.) Id.

Rolling's 23 contentions can be broken down into broad categories. Several arguments address trial counsel's decisions concerning trial strategy. He contends that trial counsel failed to: prepare for trial and investigate his case adequately; introduce certain evidence; impeach certain witnesses or cross-examine them on certain subjects; and interview and call certain witnesses, including an alibi witness. Following our review of the record, including our consideration of trial counsel's perspective at the time of trial, we conclude that these strategic decisions fell within the broad range of professional conduct and "were made in the exercise of reasonable professional judgment." *Nhek*, supra at 247. Rolling also argues that trial counsel was ineffective for failure to object to the trial court's misstatement in its charge about the date on which the indictment was returned. Even assuming without deciding that this constituted deficient performance, or that any of the other acts or omissions discussed in Rolling's 23 contentions amounted to deficiencies, Rolling has not shown a reasonable probability that any such deficiencies affected the outcome of his trial. He has failed to meet his burden of showing both deficiency and prejudice and therefore has not shown that he was denied effective assistance of counsel. The trial court did not err in denying Rolling's motion for new trial.

*Judgment affirmed. Ellington and Adams, JJ., concur.*

DECIDED OCTOBER 18, 2005.

*Bunn, Byrd, Newsom & Hix, Donna S. Hix*, for appellant.
*J. Gray Conger, District Attorney, Michele C. Ivey, Michael E. Craig, Assistant District Attorneys*, for appellee.