A06A1610. THOMPSON v. THE STATE.
(636 SE2d 779)

BERNES, Judge.

Following a jury trial, Dion Anthony Thompson appeals from his convictions on three counts of aggravated assault, three counts of possession of a firearm during the commission of a crime, and one count of possession of a firearm by a first offender probationer. Thompson contends that the jury's guilty verdict is contrary to the weight of the evidence and that the trial court erroneously denied his motion for a directed verdict. He further argues that the trial court erred (1) in allowing his booking photographs into evidence; (2) in improperly permitting the state to bolster its witness during trial testimony; and (3) in unlawfully charging the jury on the defense of justification. Finally, Thompson claims that he was denied effective assistance of counsel. Finding that his arguments lack merit, we affirm.

On appeal from a criminal conviction, we neither weigh the evidence nor judge the credibility of witnesses.[1] *Milton v. State*, 272 Ga. App. 908, 909 (614 SE2d 140) (2005). Rather, we view the evidence in the light most favorable to the verdict, determining only whether it was sufficient for a rational trier of fact to find the defendant guilty of the crimes charged beyond a reasonable doubt. Id.

So viewed, the evidence showed that on October 19, 2001, Thompson, his brother Jimmy Thompson, and their friend Carlos Gray, set out to seek revenge on Jason Williams, who had beaten Jimmy Thompson in a fist fight earlier in the evening. When they entered Williams' neighborhood, they began harassing individuals they passed on the street, inquiring as to Williams' location. They did not find Williams, but instead encountered Arthur Beach, who had been with Williams at the time of the earlier fight. Beach was standing in front of the Middleton family home and told them that Williams was not around. Thompson then tried to goad his brother into fighting either Beach or another individual in the neighborhood. After his brother refused, Thompson approached Beach declaring that he was going to fight him himself.

---

[1] Appellant's claim that the verdict is contrary to the weight of the evidence thus presents nothing for review.

Ben Stewart, a neighborhood resident and friend of Beach, happened upon the scene as he was walking up the street. Believing that Thompson and the others were threatening Beach, Stewart intervened and told them that, "[t]here don't need to be none of all that around here." Jimmy Thompson then approached Stewart as if he intended to strike him, but Thompson pushed Jimmy Thompson aside, and pulled out a gun which he pointed directly at Stewart's chest. As Thompson pulled the trigger, Stewart pushed the gun downward, so that when the gun fired, Stewart was struck in the thigh rather than the chest.

When Stewart collapsed, Thompson, Gray, and Jimmy Thompson crossed the street and ran to the side of a nearby house, where Thompson continued to fire his weapon in the direction of Stewart, Beach and the Middleton house. Gray also began firing a weapon. Beach, who had a gun that had been concealed until this point, crouched next to some trash cans adjacent to the Middleton house and began returning fire. During the shoot-out, Ulysses Middleton, who was standing at the front door of his house, received a near fatal gunshot wound to the abdomen and Keandre Twiggs, who was standing near the Middleton house, was shot in the nose. Thompson, Gray, and Jimmy Thompson fled the scene. Thompson was arrested the following day after investigating officers interviewed the victims and the witnesses to the event.

1. Thompson contends that the evidence was insufficient to support his convictions and that the trial court erred in denying his motion for directed verdict of acquittal. "Upon reviewing the sufficiency of the evidence, we are required to determine whether a rational trier of fact could have found [Thompson] guilty beyond a reasonable doubt. The same standard of review applies to the denial of a motion for a directed verdict of acquittal." (Punctuation and footnote omitted.) *Baker v. State*, 273 Ga. App. 297, 298-299 (614 SE2d 904) (2005). We therefore consider these enumerations of error together.

The indictment alleged that Thompson assaulted Ulysses Middleton, Ben Stewart, and Keandre Twiggs with a handgun. In order to prove that Thompson committed the aggravated assaults as charged, the state had to prove that Thompson either attempted to commit a violent injury to each victim or that he committed an act which placed each victim in reasonable apprehension of immediately receiving a violent injury and that he did so with a firearm. OCGA §§ 16-5-20 (a); 16-5-21 (a) (2).

At trial, the state presented testimony from at least three eyewitnesses and from Stewart himself that Thompson walked directly over to Stewart and shot him after he attempted to break up the argument between Thompson, Beach, and the other men. All of the

witnesses either knew Thompson or knew of him and identified him by name.[2] The eyewitnesses who were in a position to observe what occurred after Stewart was shot testified that Thompson continued to shoot in the direction of the Middleton house, where both Middleton and Twiggs were located. This evidence alone was sufficient to sustain Thompson's convictions for the aggravated assaults of Stewart, Middleton, and Twiggs. See *Williams v. State*, 249 Ga. 6, 8 (4) (287 SE2d 31) (1982) (the act of deliberately firing a gun in the direction of another in and of itself constitutes an aggravated assault); *Baker*, 273 Ga. App. at 299 (1).

That Middleton and Twiggs may have been struck by bullets from a gun other than Thompson's does not change this result. As previously stated, the jury was authorized to convict Thompson based on evidence showing only that he shot in the direction of Middleton and Twiggs. We nevertheless note that evidence at trial also established that Gray fired a weapon in the direction of the Middleton house and the jury could have reasonably found Thompson guilty as a party to Gray's criminal acts. See OCGA § 16-2-20.

> It is not for us to determine or question how the jury resolved any apparent conflicts or uncertainties in the evidence. Rather, on appeal, we indulge every contingency in favor of the verdict. Accordingly, we find the evidence sufficient to support the jury's finding that [Thompson] was guilty beyond a reasonable doubt of aggravated assault because he shot [Stewart] and shot in the direction of [Middleton and Twiggs].

(Footnote omitted.) *Baker*, 273 Ga. App. at 299 (1).

The same evidence was likewise sufficient to support the jury's convictions on three counts of the possession of a firearm during the commission of a crime, namely the assaults. See OCGA § 16-11-106. Finally, after the verdicts were entered on the previous counts, the state introduced a certified copy of Thompson's prior conviction evidencing that he was on probation as a first time offender for felony theft by taking at the time of the crimes. See OCGA § 16-11-131. This evidence supported the jury's guilty verdict of possession of a firearm by a first offender probationer. Id.

---

[2] A couple of the witnesses actually identified Thompson as his identical twin brother, David. An investigating officer determined that David was incarcerated at the time of the crime and could not have participated on the night in question.

2. Thompson next argues that certain booking photographs, admitted by the trial court over Thompson's objections, wrongfully placed his character in issue and prejudiced his defense. Again, we disagree.

Several eyewitnesses recognized Thompson but identified him only by his street name "Twin," or erroneously identified him as his twin brother, David, who was incarcerated at the time of the crime. Police consequently showed Stewart and Beach a photographic lineup containing Thompson's photograph. Both Stewart and Beach identified Thompson's photograph as depicting the perpetrator of the aggravated assaults. The photographic lineup was admitted at trial over Thompson's objection.

A photograph depicting Thompson on the day of his arrest for the crimes in the present case was also admitted at trial.[3] Significantly, the photograph shows Thompson wearing long dreadlocks. Witnesses at trial generally described the shooter as having long dreadlocks, but at trial, Thompson's hair was cut short.

Thus, the photographic exhibits about which Thompson complains were relevant to illustrate that it was in fact Thompson who had been identified by the victims as the shooter and to depict Thompson's appearance on the night of the shooting. *Rittenhouse v. State*, 272 Ga. 78, 79 (3) (526 SE2d 342) (2000) (booking photographs are admissible to establish identity when a defendant dramatically changes his appearance between the time of the crime and trial); *Dowdy*, 169 Ga. App. 14, 16 (4) (311 SE2d 184) (1983) (photographic lineups can be admitted to establish a defendant's identity as the perpetrator of a crime even if the defendant himself has not raised the issue of identity).

"It is well established that [booking photographic] evidence itself does not prejudice the defendant or place his character in issue." (Citation omitted.) *Dowdy*, 169 Ga. App. at 16 (4). The photographs were never described as booking photographs and no reference was ever made to Thompson having a criminal record. The trial court did not err when it admitted the photographs into evidence.

3. In his next enumeration of error, Thompson claims that the trial court erred when it allowed the state to unlawfully bolster its witness.

During cross-examination by Thompson's counsel, Stewart denied that he was lying in the present case, but admitted that under different circumstances, he would lie for his friend Beach. The state

---

[3] The additional photographs that Thompson contends in his brief were erroneously admitted were photographs of Gray and Jimmy Thompson and had no bearing on Thompson's character.

subsequently elicited testimony from an investigating officer that Stewart had never before made any mention of his willingness to lie for Beach and that Stewart's trial testimony was consistent with the statement he had made to police in his initial interview as well as with his testimony in previous court hearings.

Although a party may not normally bolster the credibility of an unimpeached witness using prior consistent statements, a party may rehabilitate a witness whose veracity has been challenged. *Robinson v. State*, 275 Ga. App. 537, 538 (1) (621 SE2d 770) (2005). "A witness's veracity is placed in issue so as to permit the introduction of a prior consistent statement only if affirmative charges of recent fabrication, improper influence, or improper motive are raised during cross-examination." (Citation and punctuation omitted.) *Pope v. State*, 266 Ga. App. 602, 605 (6) (597 SE2d 632) (2004). However, when a witness is alleged to have been motivated or influenced to testify falsely, his or her prior consistent statement may be introduced only if the prior statement was made before the alleged motive or influence came into existence. *Woodard v. State*, 269 Ga. 317, 320 (2) (496 SE2d 896) (1998).

Stewart's admission during cross-examination that he would lie for Beach called into question Stewart's motive for testifying. If Stewart was motivated to testify falsely by the desire to protect Beach, however, that motive arguably arose shortly after the incident, before Beach made his initial statement to the investigating officer. Nonetheless, even if we assume that evidence of Stewart's prior statements were wrongfully admitted, "we would reverse only if it appears likely that the hearsay contributed to the guilty verdict." *Blackmon v. State*, 272 Ga. 858, 859 (2) (536 SE2d 148) (2000). Given the overwhelming evidence of Thompson's guilt, the trial court's error in admitting Stewart's statements, if any, was harmless. See id.; *Dorsey v. State*, 252 Ga. App. 33, 34 (1) (555 SE2d 498) (2001).

4. Thompson contends that the trial court erred when it charged the jury that a person is not justified in deliberately assaulting another person solely in revenge for past or previous wrongs, but rather is only justified in defending himself to prevent an impending wrong. Thompson argues that the challenged charge was "inapt, confusing and not adjusted to the evidence" because there was no evidence that Thompson had either previously met or acted out of revenge against Stewart, Beach or Middleton.

Thompson's claim is misguided. The state presented evidence that Thompson, Gray and Jimmy Thompson were attempting to locate Williams, possibly to seek revenge upon him for successfully beating Jimmy Thompson in a fight earlier that evening. When their efforts to locate Williams failed, Thompson challenged Beach, who had been present at the altercation between Williams and Jimmy

Thompson, to a fight. He then shot Stewart for attempting to intervene. Whether Thompson was actually motivated by revenge was a question for the jury to resolve. *Hill v. State*, 250 Ga. App. 9, 12 (1) (550 SE2d 422) (2001). The trial court's charge on justification properly conformed to the evidence presented in this case. Id.

5. Finally, Thompson enumerates several reasons why he contends that his trial counsel was ineffective. While all of his claims lack merit, we will address each in turn.

> The burden of establishing the ineffective assistance of trial counsel is a heavy one that requires an appellant to establish both that counsel's performance fell below an objective standard of reasonableness, and that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the trial would have been different. A trial court's determination that an accused has been afforded effective assistance of counsel will be upheld unless it is clearly erroneous.

(Footnotes omitted.) *Reed v. State*, 248 Ga. App. 107, 108 (1) (545 SE2d 655) (2001).

(a) Thompson argues that his trial counsel was ineffective for failing to discuss with him the details of the pretrial motions that counsel filed on his behalf. Thompson contends that, as a result, he was not prepared for his own defense.

At the motion for new trial hearing, Thompson's trial counsel testified that he interviewed and consulted with Thompson prior to the filing of any pretrial motions and that he sent Thompson a copy of all motions that he subsequently filed. According to trial counsel, Thompson never asked any questions about or expressed any confusion regarding the filings, which primarily consisted of discovery motions.

More importantly, Thompson has failed to show how trial counsel's failure to explain the pretrial motions impacted the trial or his defense. He does not contend that his counsel failed to file the appropriate motions. In short, Thompson has not met his burden of proving either deficient performance or prejudice. *Reed*, 248 Ga. App. at 109 (1) (b).

(b) Thompson next contends that his counsel's performance was deficient because he declined to call Gray as a witness on Thompson's behalf during the trial. According to Thompson, Gray "could've cleared it up that [Thompson] ain't had nothing to do with what went on."

But, Thompson did not call Gray as a witness at the motion for new trial hearing, and Thompson's assertion regarding the exculpatory value of Gray's testimony was contradicted by trial counsel. At the motion for new trial hearing, trial counsel testified that he spoke with Gray prior to Thompson's trial and that even though Gray had already pled guilty, he maintained that he was not at the scene of the crime and did not know whether Thompson had been there. Thompson's counsel reasonably deduced that Gray was not only a credibility risk with the jury, but that he had no relevant information to offer in support of Thompson's defense. Thompson's counsel further explained to him that he recommended not calling Gray as a witness because he wanted to retain the right to open and close during closing argument, a right that he would have lost if he had opted to present witnesses.

"The decisions on which witnesses to call . . . and all other strategic and tactical decisions are the exclusive province of the lawyer after consultation with his client." *Penaranda v. State*, 203 Ga. App. 740, 742 (4) (417 SE2d 683) (1992). "[And], trial tactics and strategy, no matter how mistaken in hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." (Citation and footnote omitted.) *Lewis v. State*, 275 Ga. App. 41, 44 (3) (619 SE2d 699) (2005). Thompson has failed to show that trial counsel's decision to forgo calling Gray as a witness was anything less than reasonable.

(c) Thompson further claims that his trial counsel failed to impeach a prosecution witness during cross-examination. Specifically, he asserts as ineffective his counsel's failure to challenge the witness on a prior statement that she made to police that Thompson claims contradicted a statement that she made during the trial.

The record reflects that Thompson's counsel did conduct a vigorous cross-examination of the witness at issue and did in fact successfully impeach her testimony. Again, Thompson has failed to illustrate that his counsel's strategic decisions in this regard fell outside of the realm of reasonable professional judgment or otherwise had a negative impact on his defense. See *Rolling v. State*, 275 Ga. App. 902, 906 (2) (622 SE2d 102) (2005).

(d) Thompson next asserts that his counsel was deficient for failing to file a claim of misconduct against the prosecuting attorney after the first trial in this case resulted in a mistrial. After that trial had commenced and several witnesses had testified, the police department notified the prosecutor's office that it had discovered numerous items of evidence in its evidence room that had not previously been turned over to the state, including a gun and shell casings that

had been recovered from the crime scene and numerous photographs taken on the night of the shooting.

The court determined that it was fundamentally unfair to proceed in light of the newly discovered evidence that had not been provided to the defense and granted Thompson's motion for a mistrial. In so doing, however, the trial court expressly found that the error was due in no part to any misconduct by the prosecuting attorney, who herself did not know of the existence of the evidence and who immediately informed defense counsel upon its discovery. Furthermore, Thompson's attorney himself stated both during the first trial and the new trial hearing that he did not believe that error was due to any intentional misconduct or bad faith on the part of the prosecuting attorney. He therefore concluded that there was no legal basis for a misconduct claim. See *State v. Brown*, 278 Ga. App. 827 (630 SE2d 62) (2006). "Failure to make a frivolous [claim] does not constitute deficient performance." (Footnote omitted.) *Carroll v. State*, 252 Ga. App. 142, 146 (3) (555 SE2d 807) (2001).

(e) Thompson also argues that his counsel was ineffective for failing to move the trial court to exclude the newly discovered evidence during the second trial. As his counsel explained, however, after the trial court declared a mistrial, the defense could not object to the timeliness of the evidence. Furthermore, Thompson's counsel testified that after analyzing the evidence, he found some of it to be exculpatory and therefore did not desire to have it suppressed. Thompson has failed to show that his counsel's strategical decision was unreasonable or negatively impacted his defense and has therefore not demonstrated that his assistance was ineffective in this regard. See *Ogden v. State*, 266 Ga. App. 399, 401 (2) (b) (597 SE2d 491) (2004).

(f) Lastly, Thompson asserts that his counsel was ineffective for failing to subpoena and introduce the medical records of the victims in this case. The record reflects, however, that Thompson's counsel did, in fact, subpoena the medical records about which Thompson complains. Moreover, his counsel testified during the new trial hearing that the information contained within those records supported the prosecution's version of events and would have been harmful to the defense. Thompson has again failed to meet his burden to successfully illustrate ineffective assistance of counsel.

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED SEPTEMBER 20, 2006.

*Orin L. Alexis*, for appellant.

*Spencer Lawton, Jr., District Attorney, Christine S. Barker, Assistant District Attorney*, for appellee.