A03A2466. DUKES v. THE STATE.
(592 SE2d 473)

ANDREWS, Presiding Judge.

Carl Reginald Dukes was tried and convicted of burglary, two counts of aggravated assault, and possession of a firearm during the commission of a crime. On appeal, Dukes claims the trial court erred by (1) admitting his in-custody statement into evidence without finding that the statement was voluntary, (2) admitting his in-custody statement into evidence without a limiting instruction, and (3) instructing the jury in a manner inconsistent with the indictment. Dukes also claims he received ineffective assistance of counsel, and that the evidence was insufficient to support his conviction for the aggravated assault of Emma Roberson. We affirm for the reasons set forth below.

Viewed in a light most favorable to the verdict, the evidence shows that Emma Jean Roberson[1] and Charles Wesby operated the C & E Game Room in Burke County. On the evening of March 2, 1997, Dukes, accompanied by Timothy Harris, entered the C & E cursing loudly. Wesby asked Dukes and Harris to lower their voices, stop cursing, and apologize. Dukes and Harris refused to apologize, and Wesby asked them to leave. Dukes told Wesby that he was not going to leave. When Wesby went behind the counter to get assistance from Ralph Scott, Dukes "rushed behind" Wesby, and Scott and Lawrence Washington wrestled Dukes to the floor and removed Dukes from the building.

Wesby and Roberson decided to close the C & E after Dukes was ejected, but Dukes remained outside for a while, kicking and hitting the door and demanding that Wesby come out to fight. Roberson turned off the lights and hoped that Dukes would leave. Roberson heard cars leaving, including a particularly loud one, and then she heard a car with the same loud sound come back, followed by the sound of gunshots outside. Wesby, Roberson, and Scott ran back behind the counter and into the kitchen. Wesby heard Dukes and

---

[1] Roberson is referred to as "Roberson" in the trial transcript and "Robertson" in the indictment.

another man beating on the door and eventually they knocked it down.

Scott saw Dukes enter the club pointing a gun. Dukes yelled "show your face," and Scott answered and Dukes allowed Scott to leave. Dukes then called for Wesby. According to Wesby, Dukes, who "came in shooting," shot the pool table, went into the bathroom and shot, and also fired in the direction of the counter where he and Roberson were hiding. Roberson fired back approximately three times with a handgun. The police arrived shortly thereafter.

Officer Bill Wood arrived at the scene around 1:00 a.m. Wood, who was then an investigator for the Burke County Sheriff's Office, testified that he found the door to the C & E had been forced open and bullet holes were in the outside wall next to the door. Inside, Wood saw bullet holes in the wall, in the ceiling, and behind the counter. After Dukes testified, Wood testified again as a rebuttal witness for the State. During his rebuttal testimony, Wood read Dukes's in-custody statement to the jury.

1. Dukes claims the trial court erred by allowing his statement into evidence without a finding that the statement was voluntary. We disagree.

Wood testified that after Dukes was arrested that Dukes was transported to Wood's office, where Wood asked Dukes if he would be willing to give a statement about what happened. Dukes agreed to give a statement and was then "read his rights." By agreement with Dukes, Wood wrote down Dukes's statement as Dukes made it. Wood then read the statement back to Dukes, gave the written statement to Dukes so Dukes could read it, and Dukes signed the statement. After Wood read the statement at trial, it was admitted into evidence and Dukes's trial attorney stated that he had no objection to the statement's admission.

"It is well settled that where there is no challenge to the voluntariness of a statement the court is under no duty to sua sponte call for a separate hearing." *Wilson v. State*, 254 Ga. 679, 681 (2) (333 SE2d 589) (1985). Dukes did not ask for a *Jackson-Denno* hearing or otherwise question the voluntariness of his statement to Wood. Nor did he object to the admission of the statement into evidence. The trial court did not err in admitting the statement.

2. Dukes claims the trial court erred by allowing his in-custody statement into evidence without a limiting instruction to the jury that the evidence was admitted for impeachment only. He relies on *Askea v. State*, 153 Ga. App. 849 (267 SE2d 279) (1980), in which we held that,

[w]here inadmissible evidence as to a confession is offered and admitted, its admission constitutes reversible error,

> unless the jury is expressly instructed that the evidence is admitted for the purpose of impeachment only, whether or not a request to so charge be made, and whether or not any exceptions are made to the charge as given.

(Citation and punctuation omitted.) Id. at 853 (5).

*Askea* is distinguishable. There, by using the defendant's in-custody statement to cross-examine the defendant, the State was able to place an otherwise inadmissible confession before the jury, and "succeeded in doing indirectly that which it was forbidden to do directly." Id. Here, Dukes's statement was not otherwise inadmissible evidence. His statement was introduced into evidence after the examination of the interviewing officer and without objection. The trial court was not required to give a limiting instruction to the jury and did not err by failing to do so.

3. Dukes contends that the trial court erred in its jury charge on the offenses of aggravated assault and burglary. We disagree. The trial court asked if there were any objections to the charges given, but Dukes did not offer any objections or reserve his right to object. Accordingly, Dukes failed to preserve his right to assign error to the charges given on appeal. *Bryant v. State*, 268 Ga. 33, 34 (1) (485 SE2d 763) (1997).

Even if Dukes had preserved his rights, the charges were not erroneous. The trial court charged the jury that:

> An assault is an attempt to commit a violent injury to the person of another, or it can be an act which places another person in reasonable apprehension of immediately receiving a violent injury. Now, taking that to the next level, what is an aggravated assault, a person commits the offense in Georgia of aggravated assault when he assaults, as I've just described, another person with a deadly weapon or with any object, device, or instrument which when used offensively against a person is likely to or actually does result in serious bodily injury.

The trial court also instructed that "[i]t's only necessary to prove burglary in Georgia that the evidence show beyond a reasonable doubt that the accused did, without authority, enter a building or dwelling house of another with the intent to commit the alleged felony." Although Dukes claims error as to the burglary charge, he does not show how the jury charge was in error. As to the charge on aggravated assault, Dukes contends that the jury charge allowed him to be convicted in a manner which was not included in the indictment.

It is error to charge the jury that a crime may be committed by alternative methods under the statute, when the indictment charges it was committed by one specific method. If there is a reasonable possibility that the jury convicted the defendant of the commission of a crime in a manner not charged in the indictment, then the conviction is defective because of a fatal variance between the proof at trial and the indictment returned by the grand jury.

(Punctuation and footnote omitted.) *Cheeks v. State*, 234 Ga. App. 446 (1) (507 SE2d 204) (1998).

The indictment averred that Dukes committed aggravated assault on Roberson and Wesby, respectively, by assaulting them "with a certain handgun, a deadly weapon, by shooting towards" them. The jury charge was on aggravated assault by assault with a deadly weapon, which is one of the three ways in which aggravated assault may be committed under OCGA § 16-5-21 (a). We conclude that the trial court did not impermissibly charge the jury on aggravated assault.

Dukes relies on *Talton v. State*, 254 Ga. App. 111 (561 SE2d 139) (2002), which we find inapplicable. The defendant in *Talton* was indicted for aggravated assault "by shooting" the victim with a pistol. The trial court erroneously charged that the defendant could have committed aggravated assault by simply pointing the pistol at the victim, so long as the victim was in reasonable apprehension of receiving a serious bodily injury. Unlike in *Talton*, the jury charge at issue here does not specifically instruct the jury they can convict based on less than the material act alleged in the indictment. Nor does the evidence show that Dukes may have only pointed the gun, as the State's witnesses show that Dukes fired the gun and Dukes contended he fired the gun in self-defense. Compare *Boone v. State*, 250 Ga. App. 133, 144 (16) (549 SE2d 713) (2001) (evidence supported a conviction on a manner of committing aggravated assault which was charged but not included in the indictment).

4. Dukes contends that the evidence was insufficient to show that he committed aggravated assault on Roberson as alleged in the indictment because Roberson was unsure who fired a weapon in the C & E aside from herself, and there is no evidence Roberson feared for her life or that Dukes intentionally shot at her. In reviewing a defendant's challenge to the sufficiency of the evidence, we construe the evidence in a light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. See *Cox v. State*, 242 Ga. App. 334-335 (1) (528 SE2d 871) (2000). Given the testimony showing that Dukes fired his gun inside the C & E, and the bullet hole that Wood found behind the counter where Roberson was

located, we conclude that a rational trier of fact could conclude that Dukes committed the crime of aggravated assault by shooting his gun toward Roberson. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See also *Willis v. State*, 214 Ga. App. 479 (448 SE2d 223) (1994) (evidence sufficient to show aggravated assault where gun was seen and heard in defendant's presence, defendant fired the gun into an apartment, and indictment charged defendant with shooting at, toward, or in the direction of the victims).

5. Finally, Dukes claims he received ineffective assistance of counsel.

> Generally, the burden is on the defendant claiming ineffective assistance of counsel to establish (1) his attorney's representation in specified instances fell below an objective standard of reasonableness *and* (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. The trial court's determination that an accused has not been denied effective assistance of counsel will be affirmed on appeal unless that determination is clearly erroneous.

(Citation omitted; emphasis in original.) *Ramey v. State*, 239 Ga. App. 620, 622 (2) (521 SE2d 663) (1999). See also *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

(a) Dukes contends that his counsel was ineffective for failure to object to or reserve his right to object to the jury charge. However, as discussed in Division 3 above, the trial court did not give an erroneous charge. Trial counsel will not be deemed ineffective for failing to make a meritless objection. See *Fults v. State*, 274 Ga. 82, 87 (7) (548 SE2d 315) (2001).

(b) Dukes claims his counsel was ineffective because he failed to object to the introduction into evidence of the statement made by Dukes to Wood, failed to ask for a limiting instruction with respect to the jury's consideration of the statement, and failed to argue the statement in closing arguments. Given that the testimony of Wood shows that Dukes's statement was voluntarily made, we see no obvious basis on which Dukes's trial counsel could have prevented the introduction of the statement into evidence. Dukes's trial counsel testified in the hearing on motion for a new trial that he believed that the State would be able to get the statement into evidence and he did not object because he did not want to make a "big deal" about the statement and so draw it to the jury's attention. We conclude that counsel's decisions with regard to Dukes's in-custody statement, including his failure to object to its introduction, mention the state-

ment in closing arguments, or ask for any particular limiting jury instruction, were "matters of trial strategy and tactics within the bounds of reasonable professional conduct." *Totten v. State*, 276 Ga. 199, 202 (4) (577 SE2d 272) (2003).

(c) Dukes claims his trial counsel was ineffective for failing to elicit on cross-examination that Roberson was unsure who shot at her or to argue Roberson's uncertainty in closing argument. Roberson testified on direct examination that she did not see who fired the gun, although she heard Dukes's voice in the C & E, she heard gunshots, and she believed she was being shot at. Failure to explore this further in cross-examination is a valid exercise of trial strategy, inasmuch as the exploration of Roberson's level of certainty as to who was shooting at her might have brought out information unfavorable to Dukes. With respect to the closing argument, trial counsel testified in the hearing on motion for new trial that his theory of the case was based on Dukes's testimony that he had fired in self-defense to protect himself from Wesby. Roberson's testimony was not necessarily central to that theory. We will not second-guess how trial counsel chose to argue the case in closing. See generally *Paul v. State*, 257 Ga. App. 86, 87 (570 SE2d 399) (2002) (appeals court will not second-guess trial counsel's decision not to introduce evidence not central to the defense's case).

(d) Dukes claims his trial counsel was ineffective by failing to object to prosecutor's statement in closing argument that Dukes had "confessed" to aggravated assault against Roberson. Even if it was objectively unreasonable for trial counsel to fail to object to the prosecutor's characterization, we do not believe there was any reasonable probability that the results of the trial would have differed if Dukes's trial counsel had objected to that portion of the prosecutor's closing argument.

(e) Dukes maintains his trial counsel was ineffective by failing to object when the prosecutor asked witness Harris, in reference to what Harris had consumed on the night of the shooting, "How about any crack cocaine? You seem to like that." The trial court publicly rebuked the prosecutor for asking the question in that manner. Given that the trial court's reaction was likely to temper the prejudicial nature of the question in the eyes of the jury, we cannot say Dukes's trial counsel was ineffective by failing to object.

(f) Dukes claims that his trial counsel was ineffective in failing to object to the prosecutor's questioning of Harris with regard to a felony arrest and length of sentencing, failing to object to the prosecutor's introduction of Harris's Georgia Crime Information Center criminal history report, failing to object to the prosecutor's questioning of Edward Pugh about how long Pugh had served in prison, and by

impeaching his own witness, Pugh, by questioning Pugh about his criminal history.

In the hearing on motion for new trial, Dukes's trial counsel testified that he did not object to the introduction of Harris's criminal history report because he believed that the prosecution had certified copies of Harris's convictions and so could have introduced the evidence of Harris's convictions even if he had objected to the report. Dukes's trial counsel testified that he asked Pugh about his criminal record because he wanted to "get rid of it at the beginning . . . [a]nd not look like I was trying to hide anything from the jury." Trial counsel's actions in these respects were a matter of trial strategy. See, e.g., *Coburn v. State*, 252 Ga. App. 315, 319 (4) (a) (555 SE2d 750) (2001) (permitting testimony so the jury did not think defense was trying to hide something was a permissible matter of trial strategy).

With regard to the prosecutor's questioning of Harris about an arrest, as opposed to a conviction, Harris denied the arrest and the trial court instructed the prosecutor to move on to the next question. In these circumstances, we cannot say it was objectively unreasonable for trial counsel to fail to object to the prosecutor's question. As to the prosecutor's questioning of Harris and Pugh regarding the length of their sentences, even if trial counsel should have objected to the line of questioning, the witnesses' felony convictions had been shown. We cannot say that by making the information regarding the length of the sentences for those convictions available to the jury that there was a reasonable probability that the outcome of the trial would have differed.

(g) Dukes claims his trial counsel was deficient for failing to discuss with Dukes the option of putting on a good character defense. However, Dukes has failed to show that he had such a defense. Even if his trial counsel rendered an objectively unreasonable performance in failing to discuss the option of this defense with Dukes, there is no reasonable probability that the outcome of the trial would have differed had the option been discussed. For the foregoing reasons, we find the trial court did not err in denying Dukes's motion for a new trial based on ineffective assistance of counsel.

*Judgment affirmed. Barnes and Adams, JJ., concur.*

DECIDED DECEMBER 17, 2003.

*George D. Bush*, for appellant.
*Daniel J. Craig, District Attorney, Madonna M. Heinemeyer, Assistant District Attorney*, for appellee.