662 S.E.2d 811 (2008)
In the Interest of J.A.C., a child.
No. A08A0233.
Court of Appeals of Georgia.
May 30, 2008.
*812 Marnique W. Oliver, for appellant.
Steven Askew, District Attorney, Mary K. McKinnon, Assistant District Attorney, for appellee.
BERNES, Judge.
J.A.C. appeals from an adjudication of delinquency based on his commission of an aggravated assault. J.A.C. argues that the evidence is insufficient to support the juvenile court's finding of delinquency and its imposition of restrictive custody. We affirm.
On appeal from an order of delinquency, we determine whether a rational trier of fact could have found from the evidence presented that the juvenile committed the charged offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); In the Interest of R.A.W., 197 Ga.App. 225, 398 S.E.2d 261 *813 (1990). We construe the evidence in favor of the trial court's findings, leaving the credibility of witnesses and the resolution of conflicts in the evidence to the trial court. In the Interest of R.A.W., 197 Ga.App. at 225, 398 S.E.2d 261.
So viewed, the record shows that on January 19, 2007, J.A.C.'s mother called the Washington County Sheriff's Office and requested that a deputy be sent to her home to assist her in dealing with her son. When Deputy Sheriff Daniel Douglass arrived, the mother told the deputy that in the course of a family argument over J.A.C.'s failure to wash some dishes, J.A.C. had pushed his sister to the ground. The mother also told Douglass that she wanted her son removed from the house. Douglass contacted the Department of Juvenile Justice, which recommended that he get a relative to take J.A.C. for the weekend. Douglass then told J.A.C. to call a relative to come pick him up.
After J.A.C. made the call, Douglass told him to pack some bags. J.A.C. wanted to take new clothes, but his mother refused to let him have them. J.A.C. then went into the bathroom, where he stayed for approximately 15 minutes. After repeated requests from Douglass to come out, J.A.C. did so. However, after J.A.C. exited the bathroom, he started going "back and forth" into the kitchen. When Douglass again told him to pack his bags so they could leave, J.A.C. told Douglass to "get out of his face." Douglass went outside to apprise the Department of Juvenile Justice of unfolding events. As he did so, J.A.C.'s mother approached him and told him he "needed to come now." As Douglass walked into the living room, J.A.C. threw an object from the kitchen straight past Douglass's face. When J.A.C. slung a pitcher across the kitchen, breaking it, Douglass told him that he was under arrest and to put his hands behind his back. J.A.C. then ran out the side door.
Douglass followed J.A.C. out of the house and grabbed his clothing, at which point J.A.C. turned and lunged toward the officer. Having called for backup, Douglass pulled out his baton and ordered J.A.C. to back off. After a brief standoff, J.A.C. threw up his hands as if preparing to hit Douglass, who swung his baton at J.A.C.J.A.C. then caught the baton and twisted it out of Douglass's hands. Afraid that J.A.C. was going to strike him with the baton, Douglass "went into" J.A.C., who advanced toward the officer with the baton in his hand. After a struggle over the baton, Douglass got it back, but J.A.C. then pushed him to the ground and hit him in the face and chest. Some neighbors came upon the scene and assisted Douglass until backup arrived. Douglass suffered a split lip, cracked ribs and knots on his head as a result of the attack.
1. The evidence was sufficient to support the juvenile court's finding of delinquency based on J.A.C.'s commission of acts constituting the offense aggravated assault if committed by an adult. J.A.C. committed an act with a deadly weapon  advancing on Douglass with the baton in his hand  which put the officer in reasonable apprehension of immediately receiving a violent injury. See OCGA §§ 16-5-20(a)(2) (defining assault as commission of "an act which places another in reasonable apprehension of immediately receiving a violent injury"); 16-5-21 (a)(2) (defining aggravated assault as assault with a deadly weapon or an object likely to cause serious bodily injury when used offensively); In the Interest of T.W., 280 Ga.App. 693-694, 634 S.E.2d 854 (2006) (whether tree limb was a deadly weapon under the circumstances was a question for the factfinder). Compare Nichols v. State, 238 Ga.App. 412, 413-414(2), 519 S.E.2d 20 (1999) (evidence was insufficient to sustain conviction for aggravated assault when defendant grabbed officer's hand as officer was reaching for defendant's knife in leather holder attached to his belt).
2. J.A.C. suggests that there was a fatal variance between the allegations and the proof because the delinquency petition charged him with "hitting" Douglass with the baton. We disagree.
Although it is true that "[a]verments in [a petition] as to the specific manner in which a crime was committed are not mere surplusage and must be proved as laid," (punctuation and footnote omitted) Quiroz v. State, 291 Ga.App. ___(1), 662 S.E.2d 235 (2008), the State has the burden *814 of proving only the material elements of an indictment. Id. at ___(1), 662 S.E.2d 235. The petition here alleged that J.A.C.'s use of the baton against Douglass amounted to an assault with an object likely to cause serious bodily injury when used offensively, and the proof supported this conclusion. Any variance between the indictment's allegation that J.A.C. actually hit Douglass with the baton and proof that he merely advanced on him immediately before a hand-to-hand struggle over the baton was therefore immaterial. See id. at ___(1), 662 S.E.2d 235 (variance between indictment alleging that defendant held knife to victim's neck and proof that defendant only pointed it at him was immaterial); Nash v. State, 222 Ga.App. 766, 766-767(1), 476 S.E.2d 69 (1996) (variance between indictment alleging that defendant threw a knife at the victim and proof that the knife fell out of the defendant's hand as he was stabbing the victim was not fatal to conviction for aggravated assault). Compare Roach v. State, 289 Ga.App. 23, 24-25, 656 S.E.2d 165 (2007) (where indictment alleged that the defendant remained on property under one subsection of the trespass statute, and where the crime could have been committed in a different manner under a different subsection, the absence of proof that the defendant remained on the property was fatal).
3. J.A.C. also argues that the juvenile court failed to make proper written findings in its determination to impose protective custody. He attacks the juvenile court's finding under OCGA § 15-11-63(c)(1) that he was "in need of treatment and rehabilitation" as not sufficiently specific, and its finding under OCGA § 15-11-63(c)(2) that his record included "previous convictions" as outright erroneous.
OCGA § 15-11-63(b) provides that a juvenile court's order of disposition concerning a felony act by a juvenile "shall be made within 20 days of the conclusion of the dispositional hearing and shall include a finding based on a preponderance of the evidence as to whether . . . the child does or does not require restrictive custody[,]" and that the court "shall make specific written findings of fact as to each of the elements set forth in paragraphs (1) through (5) of subsection (c) of this Code section as related to the particular child." The five factors prescribed by OCGA § 15-11-63(c) are:
(1) The needs and best interests of the child; (2) The record and background of the child; (3) The nature and circumstances of the offense, including whether any injury involved was inflicted by the child or another participant; (4) The need for protection of the community; and (5) The age and physical condition of the victim.
The juvenile court's finding that J.A.C. was "in need of treatment and rehabilitation," satisfied the first factor because it drew a conclusion about the needs and best interest of the child. Compare In the Interest of E.D.F., 243 Ga.App. 68, 70(3), 532 S.E.2d 424 (2000) (vacating order of protective custody where juvenile court found only that the juvenile's "actions cause him to be a risk to others") (punctuation omitted). And even though the trial court's reference to "previous convictions" was a misnomer, it is clear from the order and dispositional hearing transcript that the trial court was aware that J.A.C.'s record and background included only one delinquency adjudication. Thus, any error in the trial court's phraseology was harmless.
Judgment affirmed.
RUFFIN, P.J., and ANDREWS, J., concur.