686 S.E.2d 279 (2009)
In the Interest of I.C., a child.
No. A09A1439.
Court of Appeals of Georgia.
October 16, 2009.
Reconsideration Denied November 2, 2009.
*280 Jimmonique R.S. Rodgers, Fort Gordon, for appellant.
Tommy K. Floyd, Dist. Atty., Mary Evans-Battle, Asst. Dist. Atty., for Appellee.
BERNES, Judge.
Following a bench trial and dispositional hearing, the juvenile court adjudicated 15-year-old I.C. delinquent based upon his commission of aggravated assault[1] and determined that he was in need of restrictive custody with 30 months of confinement in a youth detention center.[2] I.C. appeals, contending that the evidence was insufficient to support the adjudication and that the juvenile court abused its discretion in imposing restrictive custody. For the reasons that follow, we affirm.
1. I.C. first contends that the trial evidence was insufficient to establish his delinquency based upon his commission of aggravated assault. We disagree.
In considering a challenge to the sufficiency of the evidence supporting an adjudication of delinquency, we construe the evidence and every inference from the evidence in favor of the juvenile court's adjudication to determine if a reasonable finder of fact could have found, beyond a reasonable doubt, that the juvenile committed the acts charged.
In the Interest of C.M., 290 Ga.App. 788, 789(1), 661 S.E.2d 598 (2008). Our determination is made in accordance with the standard set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and we neither weigh the evidence nor judge the credibility of witnesses. In the Interest of A.A., 293 Ga.App. 827, 828, 668 S.E.2d 323 (2008).
So viewed, the evidence at trial showed that on April 19, 2008, I.C. and a group of his five friends were riding in a car together in the area of a local park. As the car approached the location where the eight-year-old victim and her family were standing on the sidewalk, I.C. pulled out a BB gun and told his friends, "[H]ey, guys, watch this." I.C. then aimed the gun out the window and fired several shots in the direction of the victim and her family. After the shooting, the victim's father saw the victim crying and bleeding from her head. The victim sustained a gunshot wound to her head, which she described as being painful and requiring medical treatment and stitches.
The victim's father followed the perpetrators' car and found it parked in the lot of a nearby church. The shooting incident was reported to a police officer, and I.C. and his friends were apprehended and identified as being the occupants of the car.
A delinquency petition was filed against I.C., alleging that he had committed the offense of aggravated assault. At trial, I.C.'s friends described the events leading up to the shooting and identified I.C. as being the person who had fired the gun. I.C. also testified at trial and admitted that he had fired the gun out the car window, but claimed that he was aiming at the bushes and did not intend to shoot the victim.
The trial evidence authorized I.C.'s delinquency adjudication. "A person commits the offense of aggravated assault when he ... assaults ... [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." OCGA § 16-5-21(a)(2). Evidence that I.C. deliberately fired the gun in the direction where the victim and her family were standing established the offense. See Culler v. State, 277 Ga. 717, 719-720(4), 594 S.E.2d 631 (2004); In the Interest of A.A., 293 Ga.App. at 827-829, 668 S.E.2d 323; Thompson v. State, 281 Ga.App. 627, 628-629(1), 636 S.E.2d 779 (2006); Dukes v. State, 264 Ga.App. 820, 823-824(4), 592 S.E.2d 473 (2003).
*281 I.C. nevertheless argues that his conduct amounted to criminal negligence rather than aggravated assault since there was no evidence that he intended to shoot the victim or that the victim was afraid of being shot before it occurred. His argument is without merit. Two of I.C.'s friends who had been in the car with him at the time of the shooting testified that I.C. "pulled out a BB gun and shot at the family" that was standing on the sidewalk in plain view. This evidence authorized a finding that I.C. intended to shoot at the individuals in the victim's family. By intentionally firing the gun in the direction of the family, I.C. was likely to seriously injure any of the family members present, including the victim. And,
[w]hen an unintended victim ... is subjected to harm due to an unlawful act intentionally aimed at someone else (such as [the other members of the family]), the law prevents the actor from taking advantage of his own misdirected wrongful conduct and transfers the original intent from the one against whom it was intended to the one who suffered harm.
Culler, 277 Ga. at 720(4), 594 S.E.2d 631. Accordingly, I.C.'s intent to assault any one of the family members is transferred to the victim who suffered the harm, regardless of whether he knew that the victim was in the line of fire or whether the victim was aware of the shooting as it occurred. Id. Because I.C. shot in the victim's direction, the aggravated assault offense was committed. See id.; Thompson, 281 Ga.App. at 629(1), 636 S.E.2d 779; Dukes, 264 Ga.App. at 823-824(4), 592 S.E.2d 473.
2. I.C. further contends that the juvenile court abused its discretion in ordering him to restrictive custody. He contends that the court failed to make proper findings as to his needs and best interests, as required under OCGA § 15-11-63(c), and made an erroneous finding of fact as to the nature and circumstances of the delinquent offense. Again, however, no reversible error has been shown.
Where a child is found to have committed a designated felony act, such as aggravated assault, the juvenile court is authorized to order restrictive custody as provided under OCGA § 15-11-63(e).[3] See OCGA § 15-11-63(a)(2)(B)(ii), (b).
In determining whether restrictive custody is required, the court shall consider: (1) The needs and best interests of the child; (2) The record and background of the child; (3) The nature and circumstances of the offense, including whether any injury involved was inflicted by the child or another participant; (4) The need for protection of the community; and (5) The age and physical condition of the victim.
OCGA § 15-11-63(c). In its order, the juvenile court complied with this provision by making specific written findings of fact as to each of the aforementioned elements.
(a) In its findings as to the needs and best interest of the child, the juvenile court expressed that restrictive custody would address I.C.'s particular needs and was in his best interest. The court concluded that a significant time for rehabilitation was warranted based upon the seriousness of I.C.'s delinquent act in the instant case, combined with his extensive history of prior delinquent acts. The court further noted that I.C. had failed to respond to less intrusive means of rehabilitation provided over the three-year course of prior court intervention, and therefore, an alternative determination was not appropriate. The court also entered a finding as to I.C.'s mental health needs and noted that he had received counseling in various community settings and residential placements for crisis intervention and that a full psychological evaluation had been completed by the Department of Juvenile Justice that would be incorporated into his plan for treatment while in restrictive custody. In addition, the court entered a finding as to I.C.'s academic needs, noting that he had *282 been removed from the regular school setting and that he was in need of a structured academic program to address his issues.
Because the court's findings as set forth above analyzed I.C.'s needs and best interest, the first statutory factor was properly addressed. See In the Interest of J.A.C., 291 Ga.App. 728, 731(3), 662 S.E.2d 811 (2008). I.C.'s claim that the court's findings amounted to mere conclusory statements is without merit. The extent and depth of analysis to which each of the statutory elements must be subjected is "in large measure" within the sound discretion of the trial court. In the Interest of C.T., 197 Ga.App. 300, 303(3), 398 S.E.2d 286 (1990). The trial court's written findings must afford this Court a basis for meaningful appellate review by showing that the determination as to restrictive custody was not arbitrary, and that the court gave due consideration to each of the required statutory findings. See id. The court's findings in this case were sufficient. See In the Interest of J.A.C., 291 Ga.App. at 731(3), 662 S.E.2d 811; In the Interest of T.N., 254 Ga.App. 330, 331, 562 S.E.2d 374 (2002); In the Interest of A.Q.H., 239 Ga.App. 865, 866-867, 522 S.E.2d 264 (1999).
I.C.'s argument that he should have received proper medication and therapeutic placement to address his psychological and developmental problems, instead of receiving restrictive custody, also affords no basis for relief. The trial court properly considered the report of a psychological evaluation performed on I.C., along with I.C.'s background and prior juvenile history, in making its determination that I.C.'s needs would be better served with restrictive custody. To address I.C.'s psychological problems, the court ordered that mental health services and rehabilitative treatment be incorporated into his treatment plan while in custody. The order for restrictive custody for the designated felony act of aggravated assault, considering I.C.'s extensive record and needs, was authorized. See C.P. v. State, 167 Ga.App. 374, 377(4), 306 S.E.2d 688 (1983).
(b) I.C. further argues that the juvenile court made an erroneous finding of fact as to the nature and circumstances of the delinquent offense. In this regard, he complains of the court's finding that the pellet from the BB gun had to be "surgically removed from the [victim's head] several weeks [after the shooting incident]." I.C. argues that there was no evidence presented at the adjudicatory hearing to support this finding.
At trial, the victim testified that the pain she suffered from the gunshot wound lasted for longer than a day and that she later had to obtain medical treatment from a doctor. When the victim was asked whether the doctor found anything in her head, she responded, "Yes. I had to get X-rays." The victim further testified that she had to get stitches, but she could not recall "what [the doctor] did in order for [her] to get the stitches."
Pretermitting whether this testimony raised a reasonable inference in support of the juvenile court's finding, the restrictive custody order is not required to be vacated. The court's findings otherwise accurately reflected the nature and circumstances of the offense, including the facts that the victim did receive a serious injury when I.C. shot her in the head and that she had to receive medical treatment for her head injury. The court's findings as to these basic facts were supported by the trial evidence and showed circumstances that authorized the order for restrictive custody. As such, any error as to the court's challenged specific finding was harmless. See, e.g., In the Interest of J.A.C., 291 Ga.App. at 731(3), 662 S.E.2d 811 (concluding that a misnomer in the juvenile court's disposition order for restrictive custody was harmless since it was otherwise clear from the order and dispositional hearing transcript that the court was aware of the evidence impacting upon its decision); C.P., 167 Ga.App. at 376-377(4), 306 S.E.2d 688 (concluding that the juvenile court's incorrect factual findings as to one of the elements for restrictive custody amounted to harmless error since the record evidence otherwise supported the court's decision).
Judgment affirmed.
SMITH, P.J., and PHIPPS, J., concur.
NOTES
[1] See OCGA § 16-5-21(a)(2).
[2] See OCGA § 15-11-63(b).
[3] When the court orders restrictive custody, the child shall be placed in the custody of the Department of Juvenile Justice for an initial period of five years, shall be confined in a youth development center for a period of not less than twelve nor more than sixty months, and shall be placed under intensive supervision for a period of twelve months. See OCGA § 15-11-63(e). In this case, the juvenile court's order for restrictive custody, including 30 months of confinement at a youth detention center, fell within the statutory guidelines.