702 S.E.2d 649 (2010)
In the Interest of J.W., a child.
No. A10A1473.
Court of Appeals of Georgia.
October 5, 2010.
*650 Ashleigh B. Merchant, for Appellant.
Paul L. Howard Jr., Atlanta, Jill Nicole Meekins, David K. Getachew-Smith, Asst. Dist. Attorneys, for Appellee.
BARNES, Presiding Judge.
J.W. was adjudicated delinquent for acts which would have constituted aggravated assault and aggravated battery if committed by an adult. The juvenile court committed him to the custody of the Department of Juvenile Justice for five years, the first two in confinement at a youth development center. J.W. appeals, contending the evidence was insufficient, his counsel was ineffective, and the juvenile court abused its discretion in sentencing him to restrictive custody. For the reasons that follow, we affirm.
When considering on appeal the sufficiency of the evidence to support a juvenile court's adjudication of delinquency, we construe the evidence in favor of the court's findings. In the Interest of R.J.S., 277 Ga. App. 74, 625 S.E.2d 485 (2005). The juvenile court resolves evidentiary conflicts and determines the witnesses' credibility, and we will affirm the adjudication if a rational trier of fact could have found beyond a reasonable doubt that the juvenile committed the acts charged. Id.
Viewed in a light favorable to the juvenile court's findings, the evidence showed that around 7:30 p.m. on February 14, 2009, 16-year-old J.W. was on a MARTA train with two other teenage boys. One of the boys, 16-year-old D.S., was tearing up a poster on the wall, and the 62-year-old victim told him to "stop all that playing." "Words were exchanged" between the victim and the teenagers, and as the train pulled into the station, the victim began heading toward the door to leave. One of the boys tripped him, and the victim testified that as he fell half in and half out of the door, the boys "had me down in the train door, beating on me." The victim suffered a broken nose and split lips, and the boys left him lying on the platform, with blood "all over" his face, down his shirt, and splattered on the ground.
A MARTA police officer responded to the scene and found the victim lying on the platform. The officer called for an ambulance, and in response to statements from several patrons he retrieved and detained the three boys. A detective interviewed two of the boys, including J.W., who admitted hitting the victim twice but contended that he did so after the victim threatened them with a knife. The other boy, A.J., admitted swinging at the victim two or three times and hitting him once or twice, also claiming he did so in response to a threat from the victim. The victim admitted carrying a pocket knife with a two-inch blade but denied pulling it out of his pocket or threatening the boys with it, and the investigating officer did not find a knife on the platform. Two cameras recorded the events on the platform, *651 although not on the train, and the State played one of the recordings for the jury. An expert video security analyst combined and enhanced the two recordings, which he played for the jury. The expert testified that no object was visible in the victim's hands and nothing was discarded onto the platform.
All three boys testified that the victim was berating them for acting up on the train, and two testified that they saw the victim remove a knife from his pocket and swing it at them. They also testified, however, that they followed the victim off the train, and both A.J. and J.W. admitted hitting the victim. When asked why he responded this way to the elderly victim asking him to stop playing around in a public place, J.W. responded, "It was the way that his demeanor towards us was. He didn't ask us in a respectful way. Not that wethat we asked him, but we still, you know, demand respect even though we're 16, whatever age we [are], and we noticed that he was intoxicated."
1. J.W. contends that the court erred in denying his motion for directed verdict as to aggravated assault and aggravated battery, because the evidence established that he was acting in self-defense. Pretermitting whether the evidence supported this defense at all, the evidence was sufficient for the juvenile court to find that J.W. exceeded any reasonable self-defense when he followed the victim out of the train and struck him. See In Interest of A.M., 248 Ga.App. 241, 242(1), 545 S.E.2d 688 (2001).
2. J.W. contends his trial counsel was ineffective by failing to cross-examine the victim about his use of alcohol the night of the incident, which would have cast doubt on the victim's testimony that he did not pull his pocket knife on the teenagers.
To prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that his counsel's performance was deficient and that the deficiency so prejudiced defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. The criminal defendant must overcome the strong presumption that counsel's performance falls within the broad range of reasonable professional conduct. The trial court's findings with respect to effective assistance of counsel will be affirmed unless clearly erroneous.
In Interest of T.M., 303 Ga.App. 322, 324-325(2), 693 S.E.2d 574 (2010). Considering the evidence presented in this case, including J.W.'s testimony admitting he followed the victim off the train and struck him, he has not demonstrated a reasonable probability that the outcome of his case would have been different if his counsel had cross-examined the victim about whether his use of alcohol affected his memory of the events.
3. Finally, J.W. contends the trial court abused its discretion by placing him in restrictive custody. OCGA § 15-11-63(a)(2)(B)(ii) lists aggravated assault and aggravated battery as "designated felony act[s]," and OCGA § 15-11-63(b) provides that the juvenile court may order restrictive custody for a juvenile found to have committed a designated felony. Generally, the court must consider five factors in determining whether to order restrictive custody, including the needs and best interest of the juvenile; his record and background; the nature and circumstances of the offense; the need for community protection, and the age and physical condition of the victim, OCGA § 15-11-63(c), In Interest of T.K.L., 277 Ga.App. 461, 463(6), 627 S.E.2d 98 (2006), and we have vacated and remanded restrictive custody sentences in which the court failed to make findings of fact addressing each factor. In the Interest of M.D.L., 271 Ga.App. 738, 742(3), 610 S.E.2d 687 (2005); In the Interest of E.D.F., 243 Ga.App. 68, 70(3), 532 S.E.2d 424 (2000). The Code further provides, however, that "[n]otwithstanding subsection (c) of this Code section, the court shall order restrictive custody in any case where the child is found to have committed a designated felony act in which the child inflicted serious physical injury upon another person who is 62 years of age or more." (Emphasis supplied.) OCGA § 15-11-63(d).
In this case, the court first found J.W. delinquent for committing the acts that would constitute aggravated assault and aggravated battery if he were an adult, and *652 subsequently committed J.W. to confinement for two years because of the victim's age and injuries. While we have found no cases specifically addressing OCGA § 15-11-63(d), given the legislative mandate in the subsection, once the juvenile court determined that the victim was 62 or older and suffered serious injuries, it was required to sentence J.W. to restrictive custody. Having no discretion in the matter, the court was thus not required to make findings of fact regarding the factors listed in OCGA § 15-11-63(c), which the court would otherwise have to consider to determine whether to place J.W. in restrictive custody. We find no abuse of discretion.
Judgment affirmed.
Senior Appellate Judge G. ALAN BLACKBURN and Senior Appellate Judge MARION T. POPE concur.