A11A2177. IN THE INTEREST OF R. W., a child.

(726 SE2d 708)

PHIPPS, Presiding Judge.

After the burglary of an Evans County pharmacy, R. W. was adjudicated delinquent and ordered into restrictive custody. R. W. appeals from the juvenile court's order of adjudication and its order of commitment and restrictive custody. R. W. claims: that the adjudication of delinquency is erroneous because the evidence was insufficient to corroborate the testimony of his accomplice; that his adjudication and disposition were "tainted" by the filing into the record of extraneous and prejudicial material; that the juvenile court was predisposed to order him into restrictive custody and improperly relied on facts not in evidence; and that the juvenile court's commitment order was not based on a proper analysis of the factors which, by statute, it was required to consider. For reasons that follow, we find no reversible error and affirm.

The evidence presented at the adjudicatory hearing shows that on June 12, 2010, approximately 27 guns were stolen from Kemp's Pharmacy. According to Jordy Melvin, he, R. W., and Dewayne Evans broke the store window with a barrel, entered the premises, smashed the gun cases inside, and put the guns from the cases, including multiple silver revolvers, into a bag. They divided the proceeds of the crime among themselves, and R. W.'s share was eight or nine guns.

Also on June 12, 2010, officers responded to a report of fighting at the Hillside Apartments.[1] After they arrived, officers saw R. W. running away from the apartments. A door was open to one of the rooms, and officers entered and found a .38 caliber pistol and bags of marijuana inside. The pistol was identified as one of the weapons stolen from the pharmacy. Officers later learned the apartment belonged to a Mr. Freeman.

Charles Freeman testified that on June 12, his girlfriend dropped him and R. W. off at the Hilltop Apartments, where Freeman went to his brother's room and knocked on the door. When his brother did not answer, Freeman went to another room, identified alternately as his aunt's room or his uncle's room. The police later arrived at the apartments. According to Freeman, "I was in my uncle['s] room getting away from my girlfriend. . . . So I . . . went in there, and my uncle [told me] they was chasing us. . . ." It appears that the police searched Freeman's brother's room. Freeman was not specific about where R. W. went after the two arrived at the apartments, testifying that "I was just out there. And [R. W.] was out there too."

---

[1] The Hillside Apartments apparently included motel rooms.

Monique Moody, who considered R. W. "like a nephew," testified that the morning after the burglary she saw R. W. and Javan Wise in her living room with several guns. According to Moody, she could not count the number of guns, but there were more than two. She was unable to say there were more than five, but there were not more than ten, and one of the guns was "shiny silver." Moody did not keep any guns in her house, and, upon seeing R. W. and Wise with the weapons, she asked them to leave. According to Moody, they had to "gather them up" before they left.

1. R. W. contends that the evidence was insufficient to corroborate Melvin's testimony that he participated in the burglary. R. W. asserts that without such corroboration the evidence was insufficient to establish that he was delinquent. We disagree that Melvin's testimony was not sufficiently corroborated. "To establish delinquency based on acts of a criminal nature, the State must prove the commission of these acts beyond a reasonable doubt, just as it would in a criminal prosecution of an adult for the same acts."[2]

Accomplice testimony must be corroborated in felony cases where the only witness is the accomplice.[3] In addition, "testimony which concerns the identity of other participants must be corroborated by some means independent of the testimony of the accomplice."[4] "But only slight evidence from an extraneous source as to a defendant's identity and participation is needed to corroborate an accomplice's testimony. And, such evidence may be entirely circumstantial."[5] Nevertheless, "the corroborating evidence must do more than cast on the defendant a grave suspicion of guilt."[6]

Here, the evidence showed that on June 12, 2010, the same day as the burglary, shortly after the arrival of police R. W. ran from apartments where a gun stolen from the pharmacy was later found; thus, a trier of fact could conclude that R. W. fled from police and that his flight showed consciousness of guilt.[7] "The corroborating evidence . . . may include defendant's conduct before and after the crime

---

[2] *In the Interest of Q. S.*, 310 Ga. App. 70, 72 (1) (712 SE2d 99) (2011).

[3] OCGA § 24-4-8.

[4] *Hill v. State*, 236 Ga. 831, 833 (225 SE2d 281) (1976) (citation omitted).

[5] *Smith v. State*, 257 Ga. App. 595, 597 (1) (571 SE2d 817) (2002) (footnotes omitted).

[6] *Smith v. State*, 238 Ga. 640, 642 (235 SE2d 17) (1977).

[7] See *Ellison v. State*, 265 Ga. App. 446, 448 (1) (594 SE2d 675) (2004) (flight from the residence which had marijuana in many rooms showed consciousness of guilt of possession of marijuana and was sufficient to corroborate accomplice testimony); *Davis v. State*, 154 Ga. App. 803, 804 (2) (269 SE2d 874) (1980) (testimony of accomplice as to defendant's participation in burglary corroborated by defendant's flight on foot after the getaway car was stopped by police several days after the burglary).

was committed."[8] The state, however, did not offer any evidence that R. W. fled from the room containing the weapon, and so R. W.'s flight from police, if that were the only corroborative evidence, may have cast only a suspicion that R. W. was involved in the burglary. But given the peculiar nature of the crime, in which numerous guns were stolen, and the evidence that very shortly after the burglary R. W. was seen in possession of between three and ten guns, the trier of fact could infer that R. W. was in unexplained possession of the proceeds of the crime.[9] Viewed in a light most favorable to the delinquency adjudication,[10] the extraneous evidence, even if slight and entirely circumstantial, connected R. W. to the burglary.[11] "If the verdict is founded on slight evidence of corroboration connecting a defendant with the crime, the verdict is legally sufficient."[12] Because Melvin's testimony was corroborated, the evidence was sufficient for any rational trier of fact to find R. W. delinquent.[13]

2. R. W. argues that his trial and disposition were "tainted" by the filing of an "investigation packet" into the record. The packet contained police reports and interviews that R. W. claims were prejudicial and inadmissible. R. W. posits that the state, by filing the investigation packet, invited the trier of fact to consider it, and that prejudice should be presumed and his adjudication reversed. But R. W.'s argument is based on nothing more than unsupported speculation. "Because this was a bench trial, there is a presumption, in the absence of a strong showing to the contrary, that the trial judge sifted the wheat from the chaff, ignored illegal evidence and considered only legal evidence."[14] The presumption has "no place where it affirmatively appears to the contrary,"[15] but R. W. points to nothing that

---

[8] *King v. State*, 268 Ga. App. 811, 813 (1) (603 SE2d 88) (2004) (citation omitted).

[9] See, e.g., *Inman v. State*, 182 Ga. App. 209 (355 SE2d 119) (1987) (recent possession of stolen property, not satisfactorily explained, is sufficient basis for the corroboration of an accomplice's testimony).

[10] See *In the Interest of A. B.*, 296 Ga. App. 350 (674 SE2d 401) (2009).

[11] *Kesler v. State*, 249 Ga. 462, 466 (2) (291 SE2d 497) (1982) (circumstantial evidence tying the defendant to the crime and justifying an inference of guilt is sufficient to corroborate an accomplice's testimony).

[12] *Bradford v. State*, 262 Ga. 512, 513 (421 SE2d 523) (1992) (citation and punctuation omitted).

[13] *Richardson v. State*, 305 Ga. App. 850, 852 (700 SE2d 738) (2010) (independent evidence was sufficient to corroborate testimony of accomplice, and cumulative evidence was sufficient for a rational trier of fact to find defendant guilty of the charged crime).

[14] *Mays v. State*, 306 Ga. App. 507, 512 (2) (703 SE2d 21) (2010) (punctuation and footnote omitted).

[15] *In the Interest of A. D.*, 282 Ga. App. 586, 589 (2) (639 SE2d 556) (2006) (citation and punctuation omitted).

affirmatively shows the juvenile court improperly considered the investigation packet. Accordingly, we find no error.

3. After R. W. was adjudicated delinquent, the juvenile court held a hearing and thereafter ordered R. W. to be confined in a youth development campus for forty-four months and ten days, and ordered him released on his twenty-first birthday. R. W. argues that the juvenile court erred in its commitment order because the court was predisposed to order him into restrictive custody, made conclusions without a proper basis, relied on facts not in evidence, and failed to properly analyze the factors set forth in OCGA § 15-11-63 (c).

R. W. does not challenge the juvenile court's conclusion that his adjudication of delinquency constituted a designated felony act.[16] "Where a child is found to have committed a designated felony act, the order of disposition . . . shall include a finding based on a preponderance of the evidence as to whether . . . the child does or does not require restrictive custody under [OCGA § 15-11-63]."[17]

> [T]he court must consider five factors in determining whether to order restrictive custody, including the needs and best interest of the juvenile; his record and background; the nature and circumstances of the offense; the need for community protection; and the age and physical condition of the victim.[18]

The weight of each factor, and the ultimate decision about whether restrictive custody is warranted, is within the discretion of the juvenile court.[19]

(a) R. W. claims that the juvenile court erred in its commitment order because it was predisposed to order him into restrictive custody. After the delinquency adjudication hearing, the judge remarked that he "plan[ned] . . . to give [R. W.] the exact same sentence as the last one," but must "go through the different things on the record . . . ." Consequently, any alleged predisposition to commit R. W. to restrictive custody is belied by the court's pronouncement of intent to review the record before issuing any ruling. The juvenile court, following a

---

[16] The juvenile court's commitment order shows that R. W. had previously been adjudicated guilty of four acts which, if committed by an adult, would constitute felonies. " 'Designated felony act' means . . . [an] act which, if done by an adult, would be a felony, if the child committing the act has three times previously been adjudicated delinquent for acts which, if done by an adult, would have been felonies." OCGA § 15-11-63 (a) (2) (B) (vii).

[17] OCGA § 15-11-63 (b).

[18] *In the Interest of J. W.*, 306 Ga. App. 339, 341 (3) (702 SE2d 649) (2010). See OCGA § 15-11-63 (c).

[19] *In the Interest of Q. S.*, supra at 77 (2).

hearing and "upon considering the evidence presented, made the requisite finding in its order to determine whether restrictive custody was required."[20] We find no error.

(b) R. W. further complains that the judge made certain statements at the disposition hearing that were not warranted by the evidence. The judge commented during the disposition hearing that incarceration was the only way to protect the county from "all these crimes you've done — and probably a bunch of them we don't know about yet." The judge also commented that because R. W. helped steal the guns, those guns were used in other crimes, and that "[w]hile I don't know the exact causation, one girl was shot — and now paralyzed." While it appears these two statements may have contained speculation on the part of the juvenile court judge, the statements are not replicated in the juvenile court's written order, which sets forth, at length, the court's basis for committing R. W. to restrictive custody. "While a judge's oral statements on the record may provide insight into the intent of [his] subsequent written judgment, any discrepancies between the two must be resolved in favor of the written judgment."[21] Accordingly, we cannot conclude that the oral statements made by the judge during the hearing show that the juvenile court abused its discretion in placing R. W. in restrictive custody.

(c) R. W. also claims that in its written commitment order the juvenile court drew unwarranted conclusions from the evidence, failed to properly address the five factors set forth by OCGA § 15-11-63 (c), and relied on facts not in evidence.

R. W. contends that the juvenile court drew unwarranted conclusions in finding (i) that the safety of the employees and owner of the pharmacy were not important to R. W. at the time of the burglary and (ii) that no restitution was paid to cover the damages. R. W. admits that the latter is true, and the first finding is an inference that the juvenile court could draw from the evidence. We find no error.

R. W. also maintains that the juvenile court failed to address the initial factor required to be considered under OCGA § 15-11-63 (c), his needs and best interests. The commitment order shows that, under the heading of "The Needs and Best Interests of the Juvenile," the juvenile court found R. W. to be "in need of secure confinement and

---

[20] *In the Interest of S. F.*, 312 Ga. App. 671, 675 (2) (a) (719 SE2d 558) (2011) (emphasis omitted).

[21] *In the Interest of S. S.*, 276 Ga. App. 666, 667 (624 SE2d 251) (2005) (footnote omitted).

rehabilitation before he is allowed to return to the community." This is sufficient to show that the court considered R. W.'s needs and best interests.[22]

R. W. also argues that in considering the fifth factor, the age and physical condition of the victim, the juvenile court made erroneous findings of fact. Specifically, after noting that Harold Kemp was the owner of the business burglarized, the court found that insurance on Kemp's store covered all the damages except for a $1,000 deductible, but that Kemp "had additional out of pocket expenses in security enhancements to the store of $16,850.00." We can find no basis in the record for the court's findings as to the dollar amount of the insurance deductible, that Kemp made security enhancements to the store, or as to the cost of the security enhancements, and so we agree with R. W. that the trial court's findings were erroneous in this respect.[23]

"[A]n abuse of discretion occurs where 'the trial court significantly misapplies the law or clearly errs in a material factual finding.' "[24] Here, the juvenile court's analysis of the five factors rests heavily on its lengthy and detailed discussion of R. W.'s record and background, and on the nature and circumstances of this and the other offenses for which R. W. had been adjudicated delinquent. As the juvenile court notes at the beginning and end of its written analysis, this incident marked the fifth time R. W. had been adjudicated delinquent for offenses which would, if committed by an adult, constitute felonies. Kemp's insurance deductible and security enhancements are not, in the context of the commitment order, material findings of fact, and the evidence supports the juvenile court's ultimate finding that restrictive custody was warranted. It follows that the error was harmless,[25] and that the juvenile court did not abuse its discretion in placing R. W. in restrictive custody.

---

[22] *In the Interest of J. A. C.*, 291 Ga. App. 728, 731 (3) (662 SE2d 811) (2008).

[23] A state's brief would have been particularly helpful to this court in assessing R. W.'s claim that these facts cannot by supported by the substantial appellate record. The state has not, however, filed an appellee's brief as required by our Rule 23 (b) ("A brief shall be filed by the appellee in all criminal appeals when the State is the appellee; and upon failure to file such brief, the State's representative may be subject to contempt."). After our independent but necessarily limited review, the appellate record appears consistent with R. W.'s claim that the factual findings at issue are unsupported.

[24] *In the Interest of Q. S.*, supra at 77-78 (2); *State v. Pickett*, 288 Ga. 674, 679 (2) (d) (706 SE2d 561) (2011).

[25] See *In the Interest of I. C.*, 300 Ga. App. 683 (686 SE2d 279) (2009) (any error as to the court's challenged specific finding was harmless, as juvenile court's findings otherwise accurately reflected nature and circumstances of offense); *In the Interest of J. A. C.*, supra (juvenile court's reference to the defendant's "previous convictions" was harmless because the remainder of the order showed that the trial court was aware that the defendant's background included only one delinquency adjudication); *C. P. v. State*, 167 Ga. App. 374, 377 (4) (306 SE2d 688) (1983) (error in stating number of delinquent adjudications was harmless because "appellant

*Judgment affirmed. Andrews and McFadden, JJ., concur.*

DECIDED MARCH 27, 2012.

*Melissa E. Lawrence, Craig T. Pearson*, for appellant.
*Tom Durden, District Attorney*, for appellee.

---

could have received restrictive custody for the designated felony act of aggravated assault alone, and certainly with consideration of his extensive record").