### 42164. WILSON v. THE STATE.
(333 SE2d 589)

CLARKE, Justice.
Wilson was convicted of the murder of Clifford Robinson, Jr. and

sentenced to life imprisonment.[1] The victim was a pimp who had several prostitutes working for him. Kelly Crawford, a/k/a "Diamond," who had worked as a prostitute for Larry Smith and then Leroy Dunbar, decided to have Robinson as her pimp. Appellant Wilson, who was a friend of Smith and Dunbar, went to Robinson's apartment and shot him in the presence of two witnesses. Both witnesses heard him say he had been paid to shoot Robinson. Appellant then fled to Alabama and later to Portland, Oregon. In Oregon he was arrested and made a statement to police before being extradited to stand trial in Fulton County, Georgia.

1. Appellant's first enumeration of error is that the evidence is insufficient to support the verdict. Not only was there testimony by eyewitnesses that appellant shot the victim without provocation but there was further evidence from Lisa McQueen, who was waiting in the car for appellant with Leroy Dunbar and Larry Smith. She said that Larry gave appellant a gun and said, "Make sure you do it good," and Leroy added, "I want you to do it good for me, too." When appellant re-entered the car, he said, with a smile on his face, "Well, Larry, he went night night." The evidence was sufficient to meet the standards of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), and the first enumeration of error is without merit.

2. In his second enumeration of error appellant contends that the court erred in failing to sua sponte call for a Jackson-Denno hearing on the question of the voluntariness of a taped statement he made to Oregon police. Although appellant raised the question of voluntariness because of his allegedly being under the influence of drugs and alcohol at the time of the statement, he did not demand a Jackson-Denno hearing and did not object to the state's playing the tape for the jury. Prior to playing the tape the state announced that it intended to introduce the statement for the sole purpose of impeachment. On this basis the court allowed the tape played without first holding a Jackson-Denno hearing. Following the playing of the tape the state called two Oregon detectives who had arrested appellant and had taken the statement. They testified that the appellant was given his Miranda rights and that he waived assistance of counsel. Further, they testified that defendant did not seem intoxicated, that no drug paraphernalia was found on him, that he appeared to understand

---

[1] The murder occurred on May 14, 1981. Appellant was indicted June 30, 1981. He was convicted by a jury on June 30, 1982, and sentenced July 1, 1982. He filed a motion for new trial August 2, 1982, which was denied November 8, 1982. He filed an out-of-time notice of appeal December 12, 1983. An out-of-time motion for new trial filed February 20, 1984, was dismissed March 14, 1985, by counsel for appellant. Pursuant to an order of the trial court specifically authorizing it for good cause, an out-of-time notice of appeal was filed February 21, 1985. The transcript was certified March 21, 1985. The case was docketed in this court April 1, 1985, and submitted for decision May 17, 1985.

what was taking place, and that his answers to questions were coherent.

In *Harris v. New York*, 401 U. S. 222 (91 SC 643, 28 LE2d 1) (1971), the United States Supreme Court found that a statement inadmissible because of lack of procedural safeguards required by *Miranda v. Arizona* would be admissible for impeachment purposes if its trustworthiness satisfied legal standards. See also *Oregon v. Hass*, 420 U. S. 714 (95 SC 1215, 43 LE2d 570) (1975). However, in *Mincey v. Arizona*, 437 U. S. 385 (98 SC 2408, 57 LE2d 290) (1978), the court held that *involuntary* statements are not admissible for any purpose. "*[A]ny* criminal trial use against a defendant of his *involuntary* statement is a denial of due process of law . . . ." *Mincey v. Arizona*, at 398.

The question in this case is whether a separate Jackson-Denno hearing is always required when the question of voluntariness is raised. It is well settled that where there is no challenge to the voluntariness of a statement the court is under no duty to sua sponte call for a separate hearing. *Wainwright v. Sykes*, 433 U. S. 72 (97 SC 2497, 53 LE2d 594) (1977). Here, although there was no demand for a separate hearing and no objection to the playing of the tape, the appellant's counsel did announce that it was their position that appellant was intoxicated at the time of the statement and consequently could not have made an intelligent waiver of his constitutional rights. Thus there is a serious question as to whether appellant is precluded from challenging the trial court's failure to give a separate hearing because of appellant's failure to object to the admission of the tape. See *Kimbrell v. State*, 252 Ga. 65 (311 SE2d 465) (1984); *Hudson v. State*, 250 Ga. 479 (299 SE2d 531) (1983). However, we need not reach the question of appellant's failure to object because we find that where a prior inconsistent statement is introduced for impeachment purposes only, even though the issue of voluntariness is raised, voluntariness can be shown without resorting to a full blown Jackson-Denno hearing. Cf. *Jones v. State*, 243 Ga. 820 (256 SE2d 907), cert. denied, 444 U. S. 957 (1979); *Scott v. State*, 243 Ga. 233 (253 SE2d 698) (1979). It is true that in this case evidence of voluntariness was not presented until after the statement was admitted. However, where voluntariness is clear from the record, there is no reversible error in the failure to introduce the evidence of voluntariness before admitting the statement.

When a statement ordinarily inadmissible without a Jackson-Denno hearing is used for impeachment purposes only, the court must caution the jury that the statement must be considered for impeachment purposes only. The court here did not give cautionary instructions to the jury regarding the purpose for which the statement could be considered. However, not only was the state's case against appel-

lant very strong but the appellant had been advised of his Miranda rights and had signed a waiver of counsel before being questioned in Oregon. The Oregon detectives who questioned him testified that he did not appear to be under the influence of drugs or alcohol, spoke coherently, and appeared to understand the situation. Under these circumstances, there was no harmful error in the court's failure to give cautionary instructions. *Scott v. State*, supra.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 5, 1985.

*Margaret H. Earls*, for appellant.

*Lewis R. Slaton, District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Assistant Attorney General*, for appellee.