JILL PRYOR, Circuit Judge,
dissenting:
The 'question we confront today is whether Nathan Gundy’s prior burglary convictions in Georgia provide a basis for the enhanced federal sentence he currently serves. The majority and I agree on the basic framework for answering this question and even on how that framework applies here, up to a point. But we differ sharply in our views of Georgia law regarding the elements of the crime of burglary.
The majority and I agree that the Georgia burglary statute under which Mr. Gun-dy previously was convicted sweeps more broadly than the generic crime of burglary that can serve as a basis for an enhanced sentence. I cannot agree, though, with the balance of the majority’s analysis. I dissent because we cannot, consistent with Supreme Court and our own precédent, divide and narrow the Georgia statute in a way that would permit us to construe Mr. Gundy’s burglary convictions as authorizing the term of incarceration he now .serves. And I dissent because the majority’s analysis affirming Mr. Gundy’s enhanced sentence has serious implications far beyond this case. The majority’s misinterpretation of Georgia law will decide the fate of countless individuals who stand to serve unjustly expanded prison terms as a result.
The district court ruled that Mr. Gun-dy’s prior Georgia burglary convictions each constituted a “violent felony” and thus support an enhanced sentence under the Armed Career Criminal Act, (“ACCA”), 18 U.S.C. § 924(e). As relevant here, the term “violent felony” includes the crime of burglary. Id. § 924(e)(2)(B)(ii). But the crime of burglary’s inclusion among ACCA’s violent felonies does not mean that a conviction under Georgia’s burglary statute qualifies as a violent felony. For Georgia burglary to qualify, all or part of the statute must criminalize what the Supreme Court has termed “generic” burglary; that is, it must “contain[] at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime.” Taylor v. United States, 495 U.S. 575, 598, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). If the statute in its entirety criminalizes generic burglary, then our analysis is easy: a violation of the statute can support an ACCA enhancement. But if it doesn’t, we have to decide whether we can divide the statute up into elements that make up generic burglary. This task is not as easy, as state statutes *1171 can be complex, but the Supreme Court has on several occasions given us guidance, most recently in United States v. Mathis, — U.S.-, 136 S.Ct. 2243, 195 L.Ed.2d 604 (2016). There, the Court reiterated that the key question is whether the state statute sets forth alternative elements, which means that the statute is divisible, or merely alternative factual means of committing the offense, which'means that the statute is not divisible, and therefore a conviction under it cannot serve as a predicate offense for an ACCA enhancement. See id. at 2249.
The majority and I agree that with its inclusion of vehicles, railroad cars, watercraft, and aircraft as types of locations that can be burglarized, Georgia’s burglary statute is broader than the generic crime of burglary, which applies only to structures. Indeed, in considering a similarly broad state statute, Mathis held that “vehicles” are not structures and thus fall outside the scope of generic burglary. See 136 S.Ct. at 2250. But turning to the question of whether these alternative types of locations are elements of the crime of burglary in Georgia or merely means of committing it, the majority and I part ways. I disagree that the burglary statute’s text and structure support the majority’s conclusion that the types of locations the statute lists are elements rather than means. This conclusion ignores the Supreme Court’s guidance and the plain meaning of the Georgia statute. I also disagree that Georgia ease law supports the majority’s conclusion. To the contrary, this case law unambiguously defines the elements of the crime of burglary, and the different types of locations that can be burglarized are not separate elements. The majority errs in determining that “burglary- of a dwelling” and “burglary of a building” are separate crimes in Georgia.
Even if I were to accept, for the sake-of argument, that Georgia law is ambiguous on whether the different types of locations that can be burglarized are elements or means of committing the offense, the inquiry would not end there. Mathis instructs courts considering statutes that are ambiguous in this respect to “peek” at -the record documents of prior convictions “for the sole and limited purpose of determining whether the [statute’s] listed items are elements of the offense.” 136 S.Ct. at 2256-57 (internal quotation marks and alterations omitted). But in this case, those documents leave us unable to “satisfy [the] demand for certainty when determining whether a defendant was convicted of a generic offense” - that can serve as an ACCA predicate. Id. at 2257 (internal quotation marks omitted). After all, of the two locational terms listed in Mr. Gundy’s indictments, one does not even appear in Georgia’s burglary statute and thus cannot constitute an element. Mr. Gundy’s indictments therefore fail to demonstrate that the different types of locations where the burglaries occurred were elements that the jury had to find beyond a reasonable doubt. In my view, these points lead to only one possible conclusion: Georgia’s burglary statute is broader than generic burglary, and is indivisible; it cannot be a violent felony under ACCA. I would reverse and remand for the district court to resentence Mr. Gundy without an ACCA enhancement.
I. DISCUSSION
The analytical framework on which the majority and I agree compels the conclusion that the Georgia burglary statute under which Mr. Gundy was convicted is indivisible. The statute defines burglary as follows:
A person commits the offense of burglary when, without authority and with the *1172 intent to commit a felony or theft therein, he enters or remains within the dwelling house of another or any building, vehicle, railroad car, watercraft, or other such structure designed for use as the divelling of another or enters or remains within any other building, railroad car, aircraft, or any room or any part thereof_
O.C.G.A. § 16-7-l(a) (2011) (emphasis added).[1] Below, I demonstrate this statute’s indivisibility in two parts. First, I review Georgia law, which tells us the elements of burglary. This is where I would end our inquiry, as we are not free to contradict Georgia’s courts on matters of state law. See Schad v. Arizona, 501 U.S. 624, 636, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991).
Second, because the majority reads Georgia law to reach the opposite conclusion, I assume for the sake of argument that state law is ambiguous on the ele-ménts-versus-means question and, as Mathis instructs, look beyond it to the record of Mr. Gundy’s convictions for the answer. But the record, too, is inconclusive. Thus, even assuming Georgia law is ambiguous such that we can look to Mr. Gundy’s record at all, we would still lack the “certainty” required to determine that the various types of locations listed in Georgia’s statute are elements rather than means. Mathis, 136 S.Ct. at 2257 (internal quotation marks omitted). Without that certainty, a conviction under the statute cannot qualify as a violent felony under ACCA.
A. Georgia Law Establishes the Georgia Burglary Statute’s Indivisibility.
Georgia’s courts have set forth the elements of burglary, making it clear that the state’s burglary statute is indivisible. The Georgia Court of Appeals declared in a precedential decision that it is “readily apparent there are two essential elements [of the crime of burglary] which must be established by the State: 1) lack of authority to enter the dwelling or building-, 2) intent to commit a felony or theft.” Lloyd v. State, 168 Ga.App. 5, 308 S.E.2d 25, 25 (1983) (emphasis added). Entering without authority either a “dwelling or building” is part of the same “essential elementQ” a single element encompassing the types of locations that can be burglarized.[2] Id.
So why does the Georgia courts’ grouping of “dwelling” and “building” into a single element necessarily answer the elements-versus-means question with respect to vehicles, railroad cars, and watercraft? It does so for two reasons. First, the statute’s use of the term “dwelling” itself includes locations other than the type of structures that generic' burglary encompasses. In Georgia, a person commits the crime of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within “... any building, vehicle, railroad car, *1173 watercraft, or other such structure designed for use as the dwelling of another.-. ..” O.C.G.A. § 16-7-1 (a) (emphasis added). By using the restrictive clause “or other such structure designed for use as the dwelling of another,” the statute unambiguously defines vehicles, railroad cars, and watercraft as possible dwellings. Id. So a defendant may be convicted of burglarizing a “dwelling” whether he has entered unlawfully an apartment, which would be a structure falling within the purview of generic burglary structure, or a motorhome or a houseboat, which would not.
Second, in the statute “building” appears- twice, both times as part of a series. Both series include types of locations that generic burglary excludes. As a matter of syntax and logic, if one item in the series, “building,” is not a separate element because the Georgia courts tells us it is part of the same element as “dwelling,” then the others in the series are not separate elements either. For these reasons, Lloyd’s statement of burglary’s elements, which groups “building” and “dwelling” together, compels the conclusion that the location types listed in the Georgia burglary statute are alternate means rather than elements.
An examination of Georgia jury instructions confirms Lloyd’s • statement of burglary’s elements. The language used in jury instructions is significant because it must always include the crime’s elements, that is, “what the jury must find beyond a reasonable doubt to convict the defendant.” Mathis, 136 S.Ct. at 2248. Georgia courts consistently have upheld jury instructions listing “building or dwelling” as part of a single element. See, e.g., Dukes v. State, 264 Ga.App. 820, 692 S.E.2d 473, 477 (2003) (upholding against unspecified claim of error jury instruction that “it’s only necessary to prove burglary in Georgia that ... the' accused did, without authority, enter a building or dwelling house of another with the intent to commit the alleged felony”); Hart v. State, 238 Ga.App. 326, 517 S.E.2d 790, 792-93 (1999) (deeming “sufficient to inform the jury of the essential elements of’ burglary a jury instruction that included “enters in a building or dwelling house of another”); see also, e.g., Long v. State, 307 Ga.App. 669, 705 S.E.2d 889, 893-94 (2011) (calling “complete and correct” a jury instruction that included “enters any building or dwelling place of another”). Indeed, Georgia’s pattern jury instructions for burglary state that a person commits burglary when “without authority, that person enters ... any building or dwelling place of another ... with the intent” to commit theft or another felony, GAJICRIM 2.62.10 (4th ed. 2016); id. 2.62.20 (4th ed. 2016).[3] Georgia jury instructions and the cases approving them thus confirm Lloyd’s statement of the burglary elements. That is, burglary of a dwelling and burglary of a building are not separate crimes.
• The majority dismisses Lloyd’s . clear statement of law, asserting that the case “had nothing to do with the locational element” • at issue here. Maj. Op.-, at 1169. True, the types' of places that could be burglarized were not at issue in Lloyd. But accepting the majority’s position requires us to assume that the Georgia Court of Appeals meant something other than what it said when it described the elements of the crime. And the numerous cases approving jury instructions with language like Lloyd’s confirm that it correctly stated burglary’s elements. •
*1174 Rejecting these clear statements by Georgia courts of the elements of Georgia burglary, the majority argues that the text and structure of the burglary statute unambiguously establish its divisibility and that case law confirms this interpretation. First, the majority contends that the statute’s disjunctive phrasing and lack of a single locational term with a separate definition section make it divisible. But Mathis and persuasive authority counsel otherwise. Second, it asserts that Georgia’s burglary statute “enumerates a finite list of specific structures,” as a divisible statute must. The statute’s plain text contradicts this assertion, however. Third, the majority points to Georgia cases about the requirements for an indictment as confirming its textual interpretation. In fact, though, these cases concern notice to the defendant and double jeopardy, not the elements of the crime. I address each of the majority’s points in turn.
First, the majority contends that the statute’s use of the disjunctive and lack of a single locational term with a separate definition section establish its divisibility. Relying solely on the word “or,” and making creative use of spacing to amplify its point, the majority determines that the statute “has three subsets of different locational elements, stated in the alternative and in the disjunctive.” See Maj. Op. at 1167. The majority then contrasts this structure with those of the state burglary statutes held to be indivisible in Mathis, 136 S.Ct. at 2250 (Iowa), United States v. Lockett, 810 F.3d 1262, 1269-70 (11th Cir. 2016) (South Carolina), and United States v. Howard, 742 F.3d 1334, 1348 (11th Cir. 2014) (Alabama). See Maj. Op. at 1166-67, 1166 n.5. The majority notes that each of these other statutes included “a single locational element” and then in a separate section or statute defined that term with a list of alternative means of committing the crime. Id. Georgia’s burglary statute, however, contains no single locational element with a separate definitions section, and so the majority posits its list of alternate locations must be elements rather than means. Maj. Op. at 1167.
As the majority acknowledges, Maj. Op. at 1162, Mathis makes clear that alternative phrasing is a necessary—but by no means sufficient—condition to read a statute as setting out alternative elements. See 136 S.Ct. at 2256 (“The first task for a sentencing court faced with an alternatively phrased statute is thus to determine whether its listed items are elements or means.”). Mathis then lists two attributes of an alternatively phrased statute that would confirm its divisibility. First, “[i]f statutory alternatives carry different punishments, then under Apprendi[4] they must be elements.” Id. Second, “a statute may itself identify which things must be charged (and so are elements) and which need not be (and so are means).” Id. Neither is present in this case, however. Absent these attributes, or something equally compelling, alternate phrasing is neutral with respect to the elements-versus-means inquiry.
Although state statutes with a single locational element defined separately have been held to be indivisible in Mathis, Lockett, and Howard, there is no truth to the converse, that the lack of a single locational element with a separate definition section means a disjunctively phrased statute is divisible. Indeed, one of our sister circuits recently held a statute with disjunctive language and without a separate definition section to be indivisible. See United States v. Barcenas-Yanez, 826 F.3d 752 (4th Cir. 2016) (holding Texas aggravated assault statute was indivisible *1175 as to intent element where assault .required “intentionally, knowingly, or recklessly causing] bodily injury to another”). Quite simply, the fact that the Georgia statute has a different structure proves nothing.
Second, the majority asserts as supporting its textual interpretation that the burglary statute sets out a “finite list of specific structures.” Maj. Op. at 1167. This finite list—along with the disjunctive phrasing and lack of a single locational term with a separate-definition section discussed above—leads the majority to .the conclusion that Georgia’s burglary statute sets out “multiple locational elements effectively creating several different crimes.” Maj. Op. at 1167.
The wording of Georgia’s burglary statute, however, contradicts the majority’s assertion. The statute includes among its list of locations that can be burglarized “other such structure^] designed for use as the dwelling of another.” O.C.G.A. § 16-7-l(a) (2011). The phrase “other such structure[s]” cannot be part of a finite list because it is necessarily expansive: Any type of structure that is designed for use as a dwelling would qualify. For example, a travel trailer,[5] although absent from the list, undoubtedly qualifies as “such [a] structure designed for use as the dwelling of another” that is capable of being burglarized in Georgia. While Georgia’s statute does not use the word “includes,” see Maj. Op. at 1166 (noting that the Georgia statute does not use the term “includes,” unlike the Alabama statute held indivisible in Howard), the phrase “other such” serves essentially the same function. The statute lays out no finite list of structures; thus it cannot “effectively creat[e] several different crimes.” Maj. Op. at 1167.
Third, the majority argues that Georgia case law concerning the adequacy of indictments confirms its interpretation. It contends that because Georgia prosecutors must specify the location of a burglary in the indictment, the different locations must be elements. This argument confuses location (e.g., “the Financial Aid Office and Alumni Office, located at Fort Valley State College, Fort Valley, Peach County, Georgia”), Morris v. State, 166 Ga.App. 137, 303 S.E.2d 492, 494 (1983), with type of location (e.g., a “building”). Id. It is true that an indictment charging burglary must identify the specific location and ownership of the allegedly burglarized place. See id. But Georgia law imposes no requirement that an indictment include the type of location burglarized. Oftentimes,- as in the case of the Financial Aid < Office building in Morris, an indictment will -identify both. But it need not do so.[6] For example, the Georgia Court of Appeals approved of “So *1176 cial Circle Drug Store, the property of Billy Snipes, located in the City of Social Circle, Walton County, Georgia” as a sufficient description of a burglarized location in an indictment. Mobley v. State, 164 Ga. App. 154,296 S.E.2d 617, 618 (1982). This indictment specified the location of the burglary, but not the type of location that was burglarized. Was Billy Snipes’s drug store in a building?[7] Almost certainly. But the indictment itself neglects to say so and was nevertheless upheld—meaning that the type of location the defendant allegedly entered need not be specified in the indictment.
' More fundamentally, the majority misapprehends the purpose of requiring the burglary’s location to be included in indictments. The majority speculates that the multiple types of locations listed in the Georgia burglary statute must be “why under Georgia law a prosecutor must select, identify, and charge the specific place or location that was burgled.” Maj. Op. at 1167. This speculation lacks support. Rather, as a case the majority cites.makes clear, an indictment must include the location burglarized in order “to give the defendant ample opportunity to prepare a defense.” Mortis, 303 S.E.2d at 494. The many indictment cases on which the majority relies never considered whether the types of locations listed in Georgia’s burglary statute are alternative elements or means of committing the crime because these cases were concerned only with the need to “inform the accused as to the charges against him so that he may present his defense and not ... be taken by surprise” and to “protect the accused against another prosecution for the same offense.” Smarr v. State, 317 Ga.App. 584, 732 S.E.2d 110, 115 (2012).
One of these cases deserves particular attention. The majority argues that DeFrancis v. Manning, 246 Ga. 307, 271 S.E.2d 209 (1980), demonstrates “[tjhat the prosecutor must select and identify the relevant statutory locational element” when charging Georgia burglary. Maj. Op. at 1167.1 take it that by this the majority means that the prosecutor must specify whether the store, restaurant, or dwelling burglarized was in a building or a railroad car. But DeFrancis demonstrates no such thing. In DeFrancis, the Georgia Supreme Court upheld a lower court’s decision overturning a defendant’s conviction for burglarizing a truck. 271 S.E.2d at 210. The appellate court held the conviction was invalid because Georgia law only criminalized entering without authority “any ... vehicle ,.. designed for use as the dwelling of another,” id. (quoting O.C.G.A. § .26-1601 (1968)), and “no proof was offered at trial that the truck was ‘designed for the use as the dwelling of another.’ ” Id. For the same reason, the DeFrancis court held that the indictment was flawed because it failed to allege that the truck was designed as a dwelling. See id. This omission was not error because—as the majority incorrectly surmises—Georgia burglary indictments must always include a single type of location. The question in DeFrancis was *1177 not whether the burglary occurred in a truck versus a building, but rather whether the truck-met the statute’s requirement that it be designed for use as a dwelling. Thus, the indictment in DeFrancis was flawed because it did not allege a crime at all.[8] In other words, DeFrancis did not bar a burglary indictment from listing “building, dwelling, truck, or railroad car designed for use as a" dwelling.” It merely said that an indictment must specify a location that the statute makes it a crime to enter.
The majority’s t many indictment cases are unhelpful because they offer no answer to the determinative question: at trial, what must, a Georgia jury find beyond a reasonable doubt to convict the defendant of burglary? See Mathis, 136 S.Ct. at 2248. Lloyd.and the many cases approving jury instructions similarly listing burglary’s elements, by contrast, answer that very question: the jury must find that the defendant entered a building or dwelling; but not whether it was a building or a dwelling or what type of dwelling. The Georgia burglary statute thus is indivisible as between buildings and all types of dwellings, including vehicles, boats, and railroad cars.
B. The Record of Mr. Gundy’s Convictions Fails to Prove Georgia Burglary Is Divisible.
We need not (indeed, may not) look past clear Georgia law, which should end our inquiry. But given our disagreement about the import of the cases it cites and the cases I cite above, the majority and I can agree that perhaps Georgia law is at least ambiguous on the elements-versus-means question. The Supreme Court advised us in Mathis that “if state law fails to provide clear answers [about a statute’s divisibility], federal judges have another place to look: the record of a prior conviction itself.”[9] 136 S.Ct. at 2256. Unfortunately, *1178 though, the language in Mr. Gundy’s indictments—the only record documents we have available—is itself too ambiguous to “satisfy Taylor*s demand for certainty when determining whether a defendant was convicted of a generic offense.” Id. at 2257 (internal quotation marks omitted).
Mr. Gundy’s burglary indictments charge him with burglarizing either a “dwelling house” or a “business house.” The two indictments charging Mr. Gundy with burglarizing a “dwelling house” cohere with the majority’s hypothesis that “dwelling house” is one of several alternative locational elements in the statute, meaning that the statute is divisible among the types of locations that can be burglarized. The term “dwelling house” does, after all, appear in the list of alternative locations in the statute. See O.C.G.A. § 16-7-1(a) (2011).
But the other indictments charging Mr. Gundy with burglarizing a “business house” seem to contradict the majority’s hypothesis. Nowhere does § 16-7-1 reference a “business house.” See id. We can probably safely assume that these business houses were buildings, but because “business house” appears nowhere in the text of the statute, that the burglary occurs in a business house cannot be an element of the crime.[10] And if some of Mr. Gundy’s indictments did not charge the location of the burglary as an element, why should we assume that the others—referencing “dwelling house[s]”—did? We cannot make this unfounded assumption. Thus, even taking Mathis’s “peek at the record,” Mr. Gundy’s indictments point in opposite directions and therefore fail to answer the question whether the types of locations listed in Georgia’s burglary statute are elements or means.
*1179 Mathis instructs courts what to do when state law and the records of a conviction are inconclusive regarding a statute’s divisibility. When these sources do not “speak plainly,” courts “will not be able to satisfy Taylors demand for certainty when determining whether a defendant was convicted of a generic offense.” Mathis, 136 S.Ct. at 2257 (internal quotation marks omitted); see also Maj. Op. at 1164 (recognizing this limitation). In my view, state law does speak plainly in this case, and as a result, I would hold Georgia’s burglary statute to be indivisible. But even rejecting clear Georgia case law, the majority acknowledges that perhaps Georgia law is at least ambiguous. See Maj. Op. at 1170. It then argues that the terms “dwelling house” and “business house” in Mr. Gundy’s indictments satisfy Taylor’s demand for certainty that his convictions were for generic burglary. Maj. Op. at 1170. This conclusion misconceives the appropriate inquiry under Mathis at this stage of the analysis: whether the indictments demonstrate that Georgia’s burglary statute lists elements not means. 136 S.Ct. at 2256-57. The majority should acknowledge that the two terms found in Mr. Gundy’s indictments— one of which cannot be found in the text of the statute and therefore cannot be an element—provide insufficient clarity to conclude that Georgia’s burglary statute is divisible.
II. CONCLUSION
Today, contrary to state case law by which we are bound, the majority declares Georgia’s burglary statute divisible and therefore capable of qualifying as a violent felony under ACCA. Not only is the decision the majority makes today wrong in Mr. Gundy’s ease, but it likely will also substantially increase the prison terms of scores of future defendants. In recent years, around 700 defendants each year have been convicted in this Circuit of being a felon in possession of a firearm.[11] Such a conviction ordinarily carries “a 10-year maximum, penalty.” See id. at 2248. But ACCA imposes a 15-year mandatory minimum sentence where a defendant has been convicted of three violent felonies, including generic burglary. See id. In the 32 years that the version of Georgia’s burglary statute we interpret today was in effect, tens of thousands of defendants were imprisoned for committing burglary in Georgia.[12] In fact, burglary is the most common crime for which people are imprisoned in Georgia.[13] These numbers, when considered together, mean that thousands of defendants stand to have their sentences increased by at least five years each based on the majority’s decision today. This ruling, which I believe is contrary to Georgia law, will have a monumental impact and, in my view, result in the unlawful incarceration of scores of inmates. I would hold Georgia’s burglary statute indivisible, vacate Mr. Gundy’s sentence, and remand for resentencing without an ACCA enhancement. I respectfully dissent.
*1180 [[Image here]]
*1181 [[Image here]]
*1182 [[Image here]]
*1183 [[Image here]]
*1184 [[Image here]]
*1185 [[Image here]]
*1186 [[Image here]]
*1187 [[Image here]]
*1188 [[Image here]]
*1189 [[Image here]]
*1190 [[Image here]]
*1191 [[Image here]]
*1192 [[Image here]]
*1193 [[Image here]]
*1194 [[Image here]]
*1195 [[Image here]]
*1196 [[Image here]]
*1197 [[Image here]]
*1198 [[Image here]]
*1199 [[Image here]]
*1200 [[Image here]]
*1201 [[Image here]]
*1202 [[Image here]]
*1203 [[Image here]]

. This version of the statute, which has since been amended, is die relevant one for our purposes because it was in effect at the time of Mr. Gundy’s burglary convictions. When I •refer to the Georgia burglary statute, I refer •to this version.

. Other Georgia decisions have framed the location element in slightly different terms, substituting "dwelling place" or "dwelling house" for "dwelling.” See, e.g., Roberts v. State, 309 Ga.App. 681, 710 S.E.2d 878, 881 (2011) (upholding validity of jury instructions where court charged jury on the burglary statute’s "requirement of proof that a defendant entered ‘the building or dwelling place of another’ ”); Hart v. State, 238 Ga.App. 325, 517 S.E.2d 790, 792 (1999) (upholding, as "sufficient to inform the jury of the essential elements of the offense” of burglary, jury instruction that stated, in part, a defendant "enters in a building or dwelling house of another”). But these slight variations' make no difference to the elements-versus-means analysis.

. Although dated 2016, these instructions apply to cases “where the offense is alleged to have occurred before July 1, 2012” because they reference the pre-2012 statute that we interpret today. See GAJICRIM 2.62.10.

. Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435, (2000).

. "A travel trailer is a non-motorized RV designed to be towed by a pickup truck, SUV or, for smaller units, even a car.” "What is a travel trailer,” RVNetLinx, http://rvnetlinx. com/wprvtypes.php?cat=tt [https://perma.cc/ KR2P-YRH4] (last visited Nov. 18, 2016); see also United States v. Guerrero-Navarro, 737 F.3d 976, 979 (5th Cir. 2013) ("Consider, for example ... travel trailers. These are not buildings, but they may nevertheless be dwellings in the ordinary sense. So although a certain venue may not qualify as a Taylor-approved building or structure, it may still ... constitute a dwelling.” (citations omitted)).

. The majority cites two cases, Chester v. State, 110 Ga.App. 733, 140 S.E.2d 52 (1964), and Kidd v. State, 39 Ga.App. 30, 146 S.E. 35 (1928), that predate the 1968 enactment of the burglary statute at issue in this case. The previous statute contained entirely' different elements—as the majority's quotation of Chester, which includes "breaking and entering” among these elements, demonstrates—-so cases interpreting it are irrelevant to our analysis. Maj. Op. at 1167 (quoting Chester, 140 S.E.2d at 53).

. The majority critiques my reliance on Mob-ley because it is "confident that the term 'drug store’ sensibly means a building, not a vehicle, railroad car, or watercraft.” Maj. Op. at 1168 n.7. Perhaps. But what if an indictment stated that the defendant burglarized "the Orient Express Restaurant, 2921 Paces Ferry Rd SE, Cobb County, Georgia”? Certainly this would provide a location sufficient to satisfy Monis. See 303 S.E.2d at 494. And we might feel confident that the term "restaurant” sensibly means a building. Further research would reveal, however, that the Orient Express Restaurant is housed in a railroad car. See Marisa Roman, This Train in Georgia is Actually a Restaurant and You Need to Visit, OnlylnYourState (Aug. 27, 2016), http://www. onlyinyourstate.com/georgia/restaurant-train-in-ga/ [https://perma.ee/4UJTUMHP].

. Burglary did not cover non-dwelling automobiles, and the crime of illegally entering an automobile was not enacted until two years after Mr. DeFrancis's conviction. See O.C.G.A. § 16-8-18; see also Ga, L. 1976, p. 186, § 1.

. While I undertake this analysis for the sake of argument, I am skeptical that the language in one person’s indictment alone could ever establish that a statute is divisible. Mathis dictates that courts "may look only to the elements of the offense, not to the facts of the defendant’s'conduct.” 136 S.Ct. at 2251 (internal quotation marks and alterations omitted). If we were to conclude that Georgia’s burglary statute is divisible solely on the language in Mr, Gundy’s indictments, I fear we would be violating this foundational precept.
Didn't Mathis expressly authorize inquiry into the language of a defendant’s indictments? Yes arid no. Yes, Mathis allowed recourse to record documents like indictments, but not, in my view, in a way that would allow a defendant’s indictments alone to prove conclusively that a statute is divisible, To be sure, Mathis provided relatively little -guidance to courts taking the "peek” it authorized into record documents. Id. at 2256. The opinion included three examples of situations where such documents could help answer the divisibility question. The first two examples described circumstances demonstrating conclusively that a statute is indivisible. In contrast, the third example outlined a scenario indicating that a statute could be divisible: “[A]n indictment and jury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime.” Id. at 2257.
This third example is quite different from the first two—both of which employed deductive methods to determine that a statute was indivisible—because it relies on reasoning by induction, Just because the indictment in one case lists a particular statutory term to the exclusion of others does not necessarily mean that term is an element. If any jury in the state validly could convict a defendant without deciding among multiple statutory terms, then those terms are means, not elements. By the same token, a prosecutor's decision to include only one of those terms in a given indictment does not necessarily mean that term is an element. *1178 Indeed, Mathis instructed us on the relative strength of the conclusions to be drawn from its three examples. Where the first two examples provided “as clear an indication as any” that a statute was indivisible, the third example "could indicate” that a statute is divisible. Id. (emphasis added).
What’s more, the meager record we have in this case would render this third example even more equivocal if we found it applied here. Mathis's third example concerns "an indictment and jury instructions." Id, (emphasis added). The inclusion of jury instructions is significant because they must always include the crime’s elements, that is, "what the jury must find beyond a reasonable doubt to convict the defendant.” Id. at 2248. Here, because Mr. Gundy pled guilty to each of his prior burglary offenses, "the closest analogs to jury instructions would be ... the statement of factual basis for the charge, shown by a transcript of plea colloquy or by written plea agreement presented to the court, or by a record of comparable findings of fact adopted by the defendant upon entering the plea.” United States v. Shepard, 544 U.S. 13, 20, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005). Unfortunately, though, the only records we have of Mr. Gundy's guilty pleas are his signatures on the various indictments charging him. The record before us includes neither jury instructions nor plea colloquies. Mathis in no way suggests that indictments alone could be enough to indicate with sufficient “certainty” to satisfy Taylor that the statute is divisible. Mathis, 136 S.Ct. at 2257 (internal quotation marks omitted). In my view, one person’s indictments, standing alone, are simply too inconclusive to prove a statute divisible.

. Georgia law confirms the general proposition that the elements of a crime are derived from the text of the statute creating that crime. The state’s criminal code provides that "[n]o conduct constitutes a crime unless it is described as a crime in [the code] or in another statute of this state." O.C.G.A. § 16-1-4. The code further provides that one of its "general purposes” is "[t]o define that which constitutes each crime_” Id. § 16-1-2(3). Taken together, these portions of the code mean that all Georgia crimes are statutory and that the criminal code itself defines each crime. Because the term "business house” does not appear in the text of Georgia’s burglary statute, it cannot be part of that crime’s definition, so it cannot be an element. See id. § 16-7-1(a).

. From 2011 through 2015, 3,398 defendants in the Eleventh Circuit were convicted of being a felon in possession of a firearm. See U.S. Sentencing Comm’n, Number of Offenders Convicted of Felon in Possession, 11th Circuit, Fiscal Years 1996 through 2015 (generated Oct. 24, 2016) (on file with the Clerk).

. From 2005 through 2011, 17,077 defendants were imprisoned for burglary, an average of over 2,400 a year. See Ga. Dep’t of Corrections, Inmate Statistical Profile, Inmates Admitted During CYs 2005-2011, available at http://www.dcor.state.ga.us/Research/ Annual_CY_profile_ inmate_admissions [https://perma.cc/6L8R-UPH4].

.Burglary was the most common crime for which people were imprisoned every year between 2005 and 2011 except 2006 and 2007. See id.